STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael D. FRANKLIN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 87-0297. Argued December 13, 1988.—Decided February 2, 1989.*

(Also reported in 434 N.W.2d 609.)

For the defendant-appellant-petitioner there were briefs by *Mary E. Waitrovich,* assistant state public

defender, and oral argument by *Eric Schulenberg,* chief of appellate division of the state public defender office.

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

CALLOW, WILLIAM G., J.   This is a review of an unpublished decision of the court of appeals affirming an order of the Milwaukee County Circuit Court, Judge Ralph G. Gorenstein, refusing to modify Michael D. Franklin's sentence for armed masked robbery, attempted murder and escape.

We address two issues in this case. First, what is the burden of proof which a defendant must meet in order to demonstrate the existence of a new factor supporting a motion to modify a sentence? Second, has Michael Franklin (Franklin) met this burden of proof and demonstrated the existence of a new factor? We conclude that the appropriate burden of proof is that of clear and convincing evidence, and we further conclude that Franklin has not demonstrated the existence of a new factor by clear and convincing evidence in this case.

On November 29, 1972, Franklin pleaded guilty to charges of armed masked robbery and attempted murder arising out of an incident in which he held up the Beneficial Finance Company of Milwaukee with a sawed-off shotgun and then shot a police officer while running from the scene. He also pleaded guilty to a charge of escaping from police custody. The Milwaukee County Circuit Court, Judge Max Raskin, sentenced Franklin to thirty-five years in prison for armed masked robbery, thirty years in prison for attempted murder, to be served concurrently with the robbery sentence, and

one year in prison for escape, to be served consecutive to the previous sentences.

At the time of the sentencing, the circuit court made no mention of parole board policy or Franklin's prospects for parole. It explicitly based the sentence on the severity of the offenses, Franklin's bad record and his antisocial attitude.

On April 10, 1985, Franklin filed a motion in Milwaukee County Circuit Court, Judge John E. McCormick,[1] to modify his sentence. He supported this motion by alleging the existence of two new factors. He contended, first, that changes in Parole Board policies made subsequent to his sentencing resulted in a longer term of incarceration than could have been predicted when he was sentenced. He further contended that his sentence was improperly based on juvenile adjudications obtained without the assistance of counsel prior to the United States Supreme Court's decision in *In re Gault*, 387 U.S. 1, 87 S. Ct. 1428 (1967).[2]

On July 26, 1985, the circuit court issued an order denying Franklin's motion for modification. Franklin appealed from this order.

The court of appeals reversed the order holding that the circuit court abused its discretion by improperly relying on an unpublished court of appeals decision when it decided not to consider the existence of a parole policy change. It noted that the statistics regarding parole policy provided by Franklin may have been sufficient to establish the existence of a new policy. It also found that the circuit court abused its discretion by mistakenly concluding that the sentencing court did

---

[1]Judge Raskin had retired.

[2]In *Gault*, the Supreme Court held that a minor has a right to counsel at delinquency proceedings if he or she faces commitment to an institution. 387 U.S. at 41.

not rely on Franklin's pre-*Gault* record. The court of appeals concluded that it was reasonable to infer that the sentencing court did consider Franklin's pre-*Gault* record in its sentencing decision.

The case was remanded to the Milwaukee County Circuit Court, Judge Ralph G. Gorenstein. The circuit court did not decide whether there was a change in parole policy or whether such a change would constitute a new factor. It simply examined Franklin's record and presentence report and issued an order denying Franklin's modification request on March 16, 1987.

The court of appeals affirmed the circuit court's order refusing to modify the sentence. It first concluded that a change in parole policies constituted a new factor which warranted consideration of whether to modify Franklin's sentence. The court of appeals then improperly[3] decided to determine itself whether Franklin's sentence should be modified. It concluded, based upon factors other than parole policy, that the sentence should not be modified. It noted in particular that Franklin had been disciplined fifty times for rule violations in prison. These violations included participation in riots, fighting, possession of a weapon and stealing. It concluded that, rather than a change in parole policy, "[a] more plausible explanation for his remaining incarcerated is his lengthy record of misconduct while in prison." The court of appeals also discussed the sentencing court's reliance on pre-*Gault* adjudications but, overruling its prior decision, concluded that there was no evidence that the sentencing court actually relied on the adjudications themselves. Instead, it concluded that the sentencing court properly

---

[3]An appellate court must not exercise the trial court's discretion. *Barrera v. State,* 99 Wis. 2d 269, 282, 298 N.W.2d 820 (1980), *cert. denied,* 451 U.S. 972 (1981).

relied merely upon Franklin's *contacts* with juvenile authorities.

We granted review on the issue of the existence of a new factor. We agree with the court of appeals that modification of Franklin's sentence is not justified. We disagree, however, with the court's conclusion that Franklin has demonstrated the existence of a new factor supporting his modification motion.

Sentence modification involves a two-step process in Wisconsin. First, the defendant must demonstrate that there is a new factor justifying a motion to modify a sentence. *State v. Hegwood,* 113 Wis. 2d 544, 546, 335 N.W.2d 399 (1983). A new factor, as defined in *Rosado v. State,* 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975), is "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." Whether a fact or set of facts constitutes a new factor is a question of law which may be decided without deference to the lower court's determinations. *Hegwood,* 113 Wis. 2d at 547.

If a defendant has demonstrated the existence of a new factor, then the circuit court must undertake the second step in the modification process and determine whether the new factor justifies modification of the sentence. *Id.* at 546. This determination is committed to the circuit court's discretion and will be reviewed under an abuse of discretion standard. *Id.*

In this case we must determine whether Franklin has demonstrated the existence of a new factor allowing the circuit court to consider sentence modification. The first issue that we must address is the appropriate

burden of proof under which a defendant must demonstrate the existence of a new factor. We are convinced that the proper standard is that of clear and convincing evidence.

We find this situation analogous to that of motions for postconviction relief under sec. 974.06, Stats. In *State v. Walberg,* 109 Wis. 2d 96, 102, 325 N.W.2d 687 (1982), we concluded that public policy requires a defendant to demonstrate a right to postconviction relief by clear and convincing evidence. The decision was based, in part, on the public policy promoting finality of judgments. *Id.* at 104. The same public policy applies in this instance. Franklin has been through the complete trial and sentencing process. He and other criminal defendants should not be able to question the validity of the results of this process except for clear and convincing reasons. A clear and convincing standard both promotes the policy of finality of judgments and satisfies the purpose of sentence modification, which is the correction of unjust sentences. *Hayes v. State,* 46 Wis. 2d 93, 105, 175 N.W.2d 625 (1970).

Citing *State v. Pope,* 107 Wis. 2d 726, 729–30, 321 N.W.2d 359 (Ct. App. 1982), Franklin contends that, just as the original sentencing hearing does not require a burden of proof standard, neither should a motion for modification. He insists that, in both cases, a circuit court should have the ability to consider all information relevant to sentencing without being constrained by the rules of evidence or a burden of proof standard.

We agree that when a circuit court sentences a defendant it may operate under more relaxed procedural rules. However, in this case we are not addressing the issues of what information a court may consider or how

9

much weight it may assign to it. This case addresses the burden of proof necessary to set aside a final judgment and reach the stage where relevant sentencing information may be considered. Thus we find that this case is analogous to that of postconviction motions and we adopt a clear and convincing evidence test.

We now must determine whether Franklin has demonstrated the existence of a new factor by clear and convincing evidence. We conclude that he has not.

Franklin insists that changes in parole eligibility constitute a new factor in this case just as they did in *Kutchera v. State,* 69 Wis. 2d 534, 230 N.W.2d 750 (1975). In *Kutchera,* this court held that the defendant demonstrated the existence of a new factor by showing that he was eligible for instant parole when he was sentenced, but that, due to this court's modification of its previous interpretation of the sentencing statute in *Edelman v. State,* 62 Wis. 2d 613, 215 N.W.2d 386 (1974), he was later required to serve a minimum sentence of one year before he and other defendants became eligible for parole. *Kutchera,* 69 Wis. 2d at 552. Thus, in *Kutchera,* the defendant demonstrated that a parole policy change had occurred which changed his real eligibility for parole.

By contrast, in this case we have no clear and convincing evidence that parole policy has been changed. Franklin's contention that parole policy has changed and affected his eligibility for parole is based on speculation which does not rise to the level of clear and convincing evidence.

Franklin supports his contention that parole policy had changed with statistics, reports and opinions. First, he cites statistics which show that, at the time Franklin was sentenced, 1972, approximately 78% of all prison releases were discretionary parole releases while only

16% were mandatory releases. By contrast, in 1979 46% of all releases were mandatory releases. Franklin insists that these statistics prove that, since he was sentenced, length of sentence has become much more important in parole decisions than factors like good behavior and hard work.

These statistics alone, however, do not establish that there was a change in parole policy. As the state persuasively points out, this statistical change may result from many things other than a change in parole policy. The parole board considers over fifty factors in reaching a decision whether to release a prisoner. It may be, for example, that today's prison population consists of prisoners who have committed more serious crimes on average than the prison population in 1972. Perhaps persons convicted for less serious offenses are more often placed on probation now than in the past and therefore do not make up as large a percentage of the prison population. Given this situation because of the importance of the "Risk to the Public" consideration the parole board may find fewer inmates qualify for release. Franklin's statistics in and of themselves do not substantiate a conclusion that a change in parole policy has occurred.

In further support of his argument Franklin also relies on a report issued in 1982 by the chairman of the parole board in which he stated:

> The fact is, of all the factors which bear on the length of time served in an individual case, the sentence imposed has *three* times the influence *of all other factors combined* in determining the length of time actually served to a grant of a discretionary parole.

11

This statement likewise does not establish a change in parole policy. The chairman merely states that length of sentences receives great emphasis in a decision for parole consideration. He does not state that this is a new policy or that it reflects a change from the past in any way.

The same is true with regard to a 1981 memorandum from the parole board chairman discussing changes in the parole decision form. Franklin contends that the change from using form PB–3 to using form PB–8 demonstrates that the parole board intended to place a greater emphasis on sentence length in making its parole decisions. The memorandum explains, however, that PB–8 was used in order to more clearly reflect *existing* policy. "The use of the thresholds on the PB–8 incorporates all of the 'Reasons for Not Recommending Parole' from the PB–3 in what I believe to be a more comprehensible, positive manner."

Franklin next points to the "Parolability Range" which is a statistical summary of past parole board decisions. He contends that it demonstrates, too, that, until a prisoner serves a certain percentage of his or her sentence, good behavior makes no difference in a decision whether to parole that prisoner. The creation of this range in 1984, however, did not reflect a change in parole policy. The range does not establish new rules which the parole board must follow. The board's description of the range specifically states that: "[t]he Range is *not* a prediction of what will happen in an individual case. It is *not* a promise on the part of the Parole Board as to what its future actions may be." It simply summarizes in statistical form the results of *past* board decisions.

12

Franklin also contends that statutory changes occurring in 1983 should be considered in identifying a change in parole policy. He expressly admits, however, that these changes do not affect him. Further, these are legislative changes which do not demonstrate any policy change on the part of the parole board.

Finally, Franklin relies on statements by several circuit court judges in which they state that the parole board now requires prisoners to serve more of their sentences than in the past before the parole board will consider releasing them. These statements, however, are merely opinions which are either unsupported or are based upon the same parole board documents cited by Franklin in this case. They do not establish a change in parole policy.

In sum, Franklin has failed to demonstrate by clear and convincing evidence that there has been a change in parole policy constituting a new factor.

Even if we were to conclude, however, that Franklin has demonstrated a change in parole policy, our conclusion that Franklin has failed to meet the *Rosado* definition of a new factor would not change. According to *Rosado,* the factor or factors necessary to constitute a new factor must be "highly relevant to the imposition of sentence." 70 Wis. 2d at 288. Parole policy simply was not relevant to the original sentence issued in this case.

The sentencing court gave several reasons in support of the sentence it imposed. It found Franklin's character "revolting," and focused on his bad record of crime. It also considered the severity of the offense and concluded that "[s]ociety has much to fear from a young man of this kind, of this make up. One is not safe

on the streets with him around." The court did not refer to the possibility of parole nor did it discuss parole board policy. The sentencing court did not sentence Franklin with the expectation that he would receive an early parole. It sentenced Franklin with the goal of protecting society.

We conclude that a change in parole policy cannot be relevant to sentencing unless parole policy was actually considered by the circuit court. We agree with the Third Circuit in *Musto v. United States,* 571 F.2d 136, 140 (3d Cir. 1978), which held that a court may "correct a sentence only where the sentencing judge's *express* intent is thwarted by the promulgation of new parole policies contemporaneous or subsequent to the original imposition of sentence" (emphasis added).

This conclusion follows logically from the purpose of sentence modification. As we noted earlier, that purpose is to correct unjust sentences. *Hayes,* 46 Wis. 2d at 105. Since parole policy was irrelevant to the original sentencing decision, a subsequent change in parole policy cannot make the original sentence unjust.

Franklin contends that *Kutchera* was a case in which parole policy was found to be relevant to the original sentence, not because the judge expressly mentioned it, but because the prosecutor raised the point when recommending a long sentence. Franklin contends that this case is identical. He asserts that, although the circuit court did not explicitly consider parole board policy, the prosecutor discussed parole policy and thus it was implicitly considered by the sentencing judge.

*Kutchera* is distinguishable from this case. Although it was not reflected in the opinion, the record in *Kutchera* reveals that the circuit court *did* expressly

14

discuss parole policy when making its sentencing decision. Record at 605, *Kutchera v. State,* 69 Wis. 2d 534, 230 N.W.2d 750 (1975) (No. 185). The subject was not mentioned by the prosecutor alone.

In this case, by contrast, the sentencing court never expressly considered parole eligibility. It would be improper to impute the thoughts of the prosecutor to the sentencing judge. Indeed, the sentencing court made it clear that its considerations in the sentencing process were not identical with the prosecutor's when it rejected the prosecutor's call for consecutive sentences on the masked armed robbery and attempted murder charges and opted to have the terms run concurrently.

We do not read *Kutchera* to imply that parole policy is automatically relevant to a sentencing decision when it is mentioned, not by the court, but by the prosecutor.[4] In order for a change in parole policy to constitute a new factor, parole policy must have been a relevant factor in the original sentencing. It is not a relevant factor unless the court expressly relies on parole eligibility. If the court does base its sentence on the likely action of the parole board, it has the power to protect its own decree by modifying the sentence if a change in parole policy occurs. Because it was not expressly considered by the court in sentencing, parole policy was not relevant to the imposition of this sentence.

---

[4]The *Kutchera* opinion concludes by stating "[u]nder the circumstances of this case, parole eligibility would be a new factor." *Id.* at 553. While the opinion does not make specific reference to the trial judge's comment concerning parole eligibility, the record reveals that the trial judge commented on parole eligibility. Therefore the "circumstances" of the *Kutchera* decision included the judge's recognition of parole eligibility.

Franklin has not demonstrated the existence of a new factor supporting his modification motion. He has both failed to demonstrate by clear and convincing evidence that parole policy has changed and failed to demonstrate parole policy was considered in any way by the sentencing court.

*By the Court.*—The decision of the court of appeals is affirmed.