STATE of Wisconsin, Plaintiff-Respondent,

v.

Lyndon L. SMET, Defendant-Appellant.

Court of Appeals

*No. 93–3132–CR. Submitted on briefs May 31, 1994.—Decided June 14, 1994.*

(Also reported in 519 N.W.2d 697.)

On behalf of defendant-appellant, the cause was submitted on the brief of *Steven L. Miller* of Green Bay.

On behalf of plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *William C. Wolford*, assistant attorney general of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Lyndon Smet, sentenced to three concurrent ten-year sentences in Brown County, to run consecutive to a sentence imposed in Manitowoc County, appeals an order denying his motion for post-conviction relief. Smet argues that the court erroneously accepted the Manitowoc offense as a "prior conviction" as designated in a sentencing guidelines scoresheet, thereby placing him in a higher recommended sentence range. He argues that this error was a "new factor" requiring sentence modification. We agree that the Department of Corrections erred by determining that Smet had a prior conviction for purposes of scoring his criminal history. However, we conclude that the court properly exercised its discretion when it refused to modify the sentence. We therefore affirm the order denying relief.

■

A motion for resentencing involves a two-step process:

> First, the defendant must demonstrate that there is a new factor justifying a motion to modify sentence. A new factor as defined in *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69[, 73] (1975), is a "fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of the original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." . . .
> If a defendant has demonstrated the existence of a new factor, then the circuit court must undertake the second step in the modification process and determine whether the new factor justifies modification of the sentence.

*State v. Franklin*, 148 Wis. 2d 1, 8, 434 N.W.2d 609, 611 (1989) (citation omitted). Whether the defendant has demonstrated a new factor is a question of law and no deference is owed the trial court. *Id.* Whether a new factor warrants a sentence modification is a discretionary determination, and therefore the standard is whether the trial court erroneously exercised its discretion. *Id.*

We agree with Smet's contention that the probation and parole agent's scoring determination erroneously placed Smet in a higher sentencing range than the guidelines contemplated, although the miscalculation is readily understandable given the sequence of events. Smet gave a written statement to the police, admitting to four sexual assaults of his infant daughter, the first in Manitowoc County in August 1989, succeeded by three incidents in Brown County in 1990, 1991 and 1992, respectively. Smet was then charged in both counties. He entered pleas of no contest to the three counts in Brown County on December 7, 1992, but a presentence investigation was ordered, and sentencing was delayed until March 12, 1993. In the meantime, he pleaded and was immediately sentenced on the Manitowoc County charge on December 16, 1992.

At the March 1993 sentencing hearing in Brown County, the probation and parole agent compiled and filed the standard sentencing guidelines scoresheet created by the Wisconsin Sentencing Commission.[1] In

---

[1] Section 973.01, STATS., provides:

Sentencing commission; duties. (1)  The sentencing commission shall do all of the following:

(a)  Appoint an executive director having appropriate training and experience to conduct statistical studies of sentencing practices, interpret and explain social science information relating to

compiling Smet's score, the agent added one point for a "prior adult felony conviction," the Manitowoc conviction of December 16, 1992, and added three points because this prior offense was "violent." This four-point sum for "criminal history" (A scale), combined with two points scored for "severity of offense" (B scale), placed Smet in the eighty-four- to ninety-six-month recommended sentence range according to the guidelines grid or matrix. If the Manitowoc County offense was not a prior conviction, it would reduce the prior history score to zero. The effect of this reduction would have placed Smet in the forty-two- to sixty-month recommended sentence range.

We conclude that the Manitowoc County conviction was not a prior conviction for purposes of scoring.

sentencing, and prepare proposed sentencing rules. The executive director shall serve for 5 years and shall continue until a successor is appointed. During the 5-year term, the executive director may be discharged only for cause by the commission after a public hearing. The executive director position is in the unclassified service.

(b) Promulgate rules under s. 973.011, using the procedure under ch. 227, necessary to carry out its duties and functions under this chapter.

(c) Collect, develop and maintain statistical information relating to sentencing practices and other dispositions of criminal complaints. The sentencing commission may promulgate forms for this purpose. Sentencing courts shall promptly complete and return these forms as directed by the sentencing commission.

(d) Cooperate with the supreme court in developing instructional programs for judges relating to sentencing, including the intensive sanctions program, restitution policies, visits under s. 346.65 (2i) and community service alternatives to incarceration and probation.

(e) Explain sentencing practices and rules to the public.

(f) Exercise all powers and perform all duties necessary and proper in discharging its responsibilities.

This court has previously indicated that a conviction occurs upon adjudication of guilt by the court, regardless of the fact that sentencing occurs later. *State v. Wimmer*, 152 Wis. 2d 654, 664, 449 N.W.2d 621, 625 (Ct. App. 1989). While *Wimmer* dealt with the meaning of the word "conviction" in context of the repeater statute, we see no reason to deviate from the same definition here. Consistency promotes both certainty and a uniform application of the law. Thus, because the Brown County court accepted Smet's plea before the plea was accepted in Manitowoc County, the latter event is not a prior conviction for guidelines purposes.

In order to make a meaningful review of the refusal to modify the sentence, we should first examine the original sentencing proceeding.

Section 973.012, STATS., provides:

> Use of guidelines by judges. A sentencing court, when imposing a sentence, shall take the guidelines established under s. 973.011 into consideration. If the court does not impose a sentence in accordance with the recommendations in the guidelines, the court shall state on the record its reasons for deviating from the guidelines. There shall be no right to appeal on the basis of the trial court's decision to render a sentence that does not fall within the sentencing guidelines.[2]

---

[2] Smet maintains that although a defendant has no right to appeal a sentence solely because it exceeds the established guidelines, he may seek review of whether a failure to follow the guidelines was an erroneous exercise of discretion, citing *State v. Speer*, 176 Wis. 2d 1101, 501 N.W.2d 429 (1993). The State argues that *Speer* is not controlling precedent on the issue of whether a trial court's compliance or noncompliance with § 973.012, STATS. (use of sentencing guidelines) is an appealable issue. *Speer* involved a certification from the court of appeals

At the sentencing hearing, the prosecution and defense jointly recommended three eight-year sentences to run concurrently. The recommendation was not explicit, but we accept as a fact the tacit suggestion that the parties intended to recommend that the sentences run concurrent not only with each other, but also concurrent with the Manitowoc sentence imposed earlier. The presentence investigative report (PSI) recommended three concurrent ten-year sentences, but expressly declined to recommend whether the sentences should be concurrent or consecutive to the Manitowoc sentence, the writer deferring to the trial court's discretion. At the sentencing hearing, defense counsel pointed out that the "prior conviction" arose out of a "complete confession that would have included the charge from Manitowoc County," that the three offenses in Brown County arose out of the same basic course of conduct when the family moved from Manitowoc to Green Bay and, but for the fortuitous intervention of a change in residence, all four counts would have been presented in one prosecution.

---

inquiring whether *State v. Halbert*, 147 Wis. 2d 123, 432 N.W.2d 633 (Ct. App. 1988), was a correct statement of the law. *Halbert* held that the last sentence of § 973.012 precluded review of a circuit court's alleged failure to consider the guidelines and/or to place its reasons for deviating from the guidelines on the record. *Speer*, 176 Wis. 2d at 1120, 501 N.W.2d at 435-36.

The State contends that because only three members of the supreme court joined in rejecting *Halbert*, while three members suggested the issue was not appealable, *Halbert* remains the law. Because our use of the analysis used by Justice Bablitch in *Speer* results in the same affirmance of the circuit court's order as would a refusal to review it, we need not be concerned whether *Speer* is binding precedent.

The trial court rejected the recommendation for eight years concurrent, and sentenced Smet to three concurrent ten-year sentences, to run consecutive to the Manitowoc County sentence. The court explained its sentence, indicating that it had reviewed the file, and stated: "I have looked at the results of the presentence investigation. I have read it carefully several times. I have looked at the guidelines for this crime." It found that a long term was necessary for Smet's rehabilitation. It considered his criminal record, and expressed concern for the fact that the assaults extended over a period of almost three years. The court characterized Smet's behavior as "horrendous," "vicious" and "aggravated" in light of the fact that the child was only two years old when the assaults started. The court considered the potential long-term effects of the continuing conduct upon the little girl and the violation of the trust the young victim had placed in him. It considered Smet's background, education, character and social traits, including an "abysmal" employment record. It concluded that Smet had shown remorse at the time of sentence, but not before.[3]

---

[3] The PSI stated that Smet was convicted of shoplifting in 1980, reckless use of a weapon in 1984, criminal damage to property in 1991 and various civil and criminal traffic offenses. It stated that Smet was reported as a drug user, a person with an uncontrollable temper and the prior weapons conviction involved his pointing a loaded firearm at others. The PSI also stated: "Mr. Smet's work experience can be best summed up as sporadic and inconsistent. Over the last couple of years he has been involved in the welfare system as his main source of support." It also reported that Smet minimized his misconduct as "isolated inciden[t]s of accidental contact." Smet's earlier statement to the police also characterized the infant victim as the sexual aggressor in the activities.

The court found one of the most important factors was the need for protection of the public, other children, and the victim in particular. The court found a need for close rehabilitative control that could only be gained in the prison system. In imposing a sentence consecutive to the previous one, the court expressly recognized that the case involved the same victim, but emphasized the fact that the assaults occurred over a period of years, the amount of treatment needed and Smet's failure to "come to terms with what he has done."

After his post-sentence discovery of the guidelines scoring error, Smet reiterated his view of the nature of his crimes as essentially a single, continuous event. He also noted that a corrected score would place him in a guidelines sentence range of forty-two to sixty months rather than eighty-four to ninety-six months as initially suggested. The court indicated that it had reviewed the PSI, the sentence and the sentencing proceeding transcript. The court also stated:

> The guidelines I did not give considerable weight to. I considered them as I'm required to do, but since I know how they're put together,[4] and it has no purpose other than the statistic of how judges sentence, that's all it is. It's a compilation of statistics. I do not put a lot of weight in the guidelines. They do sometimes assist the court. In this case I didn't think they were relevant because of the age of the victim, special vulnerability of the victim, the length of time that this went on, and I did take that into consideration.

[4] Judge Dilweg was a member of the Sentencing Commission from 1984 to 1990.

The court reiterated the importance of the fact that the crimes occurred over a period of years and therefore rejected the contention that they should not be considered separately. It also confirmed the validity of the "essential factor" in the original sentence: Smet's failure to take full responsibility for the crimes, placing part of the blame on the child and his former spouse. The court again rejected the guidelines range in light of its finding of these aggravating circumstances. When asked at the conclusion of the hearing to clarify whether there was no "new factor" for purposes of modification, the court replied: "I'm saying legally there's no new factor, but even if there were, it is of absolutely no effect, okay?"

Whether the scoring error was a new factor depends upon whether the recommended guidelines sentence range was "highly relevant to the imposition of sentence . . . ." *Franklin*. This determination will vary from case to case and may depend upon the degree to which the sentencing court was influenced by the recommendation. While the *Franklin* test of what factors were "highly relevant" poses a dilemma in some situations, it is readily apparent that the court here placed little weight upon the guidelines. The weight to be accorded the various relevant factors in sentencing is a matter of wide trial court discretion. *Anderson v. State*, 76 Wis. 2d 361, 364, 251 N.W.2d 768, 770 (1977).

Even if we were to conclude that the error was a new factor, that is only the first step of the sentence modification process under *Franklin*. The court indicated that the same factors that influenced the original sentence remained the factors upon which it denied a modification, regardless of the recommended guidelines. The extent to which the sentencing guidelines

34

should be considered by the trial court was the subject of discussion in *Speer*. In that case, at a postconviction hearing, the defendant argued that the aggravating circumstances checked off by the circuit court on the sentencing guidelines scoresheet were inappropriate factors to be considered. *Id.* at 1126, 501 N.W.2d at 438. The trial court commented:

> The sentencing matrix . . . is not now, will not in the future and has not in the past [been] of any part in the sentencing procedure. It is a statistical analysis which is sent to the State . . . .
>
> My signature may appear on the bottom of it, but it's mandatory that we file those. It's not binding on this Court and does not give all of the reasons. In fact, I, as a routine, do not put all the reasons I sentence a person on that form.

*Id.*

In affirming the circuit court despite these remarks, Justice Bablitch stated:

> The circuit court's statements are clearly inaccurate to the extent that they indicate that the sentencing guidelines are not a part of the sentencing procedure. Furthermore, standing alone, they might lead one to believe that the court did not, in fact, consider the guidelines. However, when read as a whole, the record indicates that the circuit court in this case made itself aware of what the guidelines said concerning a defendant in Speer's position and considered the guidelines when imposing Speer's sentence.

*Id.* at 1126-27, 501 N.W.2d at 438.

The circuit court in the case before us now did not indicate that the guidelines are not part of the sentencing procedure. The court expressly stated that they

35

were considered and rejected. It is true that the court characterized the guidelines as having "no purpose other than the statistic of how judges sentence," but as was true of similar trial court remarks in *Speer*, when read as a whole, the record indicates that the court was aware of and considered the guidelines when deciding the motion to modify the original sentence. The court gave a reasoned explanation for its decision, fully aware that the sentence exceeded the recommended forty-two- to sixty-month sentencing range.

Sentencing is a discretionary judicial act and is reviewable in the same manner as all discretionary acts. *McCleary v. State*, 49 Wis. 2d 263, 277-78, 182 N.W.2d 512, 519 (1971). The proper procedure calls for the trial judge to state the facts upon which she predicates her judgment, and give reasons for her conclusion. *Id.* at 281, 182 N.W.2d at 521. If the facts are fairly inferable from the record, and the reasons indicate the consideration of legally relevant factors, the sentence should ordinarily be affirmed. *Id.* That is the situation here. The court considered the extended time over which the crimes were committed and inferred the effects upon the child victim. It emphasized Smet's failure to accept full responsibility for his behavior, and a need to protect the public generally and the victim in particular. It applied the facts it found to reach a reasoned and reasonable conclusion: The original sentence was appropriate. We therefore affirm the order denying postconviction relief.

*By the Court.*—Order affirmed.