State of Wisconsin, Plaintiff-Respondent,
v.
Corrina L. Deichsel, Defendant-Appellant.
No. 03-1076-CR.
Court of Appeals of Wisconsin.
Opinion Filed: March 3, 2004.
Before Anderson, P.J., Nettesheim and Snyder, JJ.
¶ 1. ANDERSON, P.J.
Corrina L. Deichsel (Deichsel) is pursuing a modification of her sentence, asserting that there are three "new factors" that justify a reduction of her sentence. We affirm the trial court's rejection of her motion because it is nothing more than a new argument based on information known at the time of sentencing.
¶2. In the early morning hours of January 8, 2001, Shantel Quick was attacked with a claw hammer in her home by a former boyfriend, Scott Deichsel. Scott was the father of Quick's son and was intent on avoiding his child support obligations. During the initial phases of the investigation, Scott's wife, Corrina, denied any involvement in the assault. However, as the investigation proceeded, Deichsel gave a series of statements to detectives that progressively inculpated her in the assault. For example, on January 24, 2001, she admitted to detectives that she accompanied Scott to Quick's but stayed in their vehicle while Scott committed the assault. In this statement, she said that Scott parked near a barn and she remained in the car for twenty-five minutes and because she was growing increasingly uncomfortable, she left the area and when she returned, she found Scott. She also related that when she drove away from the scene of the assault, Scott directed her to a dumpster where he tossed out the evidence.
¶3. After Scott learned that Deichsel filed a divorce action and after she testified against him at a preliminary examination, Scott gave a statement to detectives that Deichsel was the instigator and planner of the assault on Quick. He told the detectives that Deichsel wanted Quick dead so that he would not have to pay child support, which was a prime irritant in their marriage. According to Scott, he and Deichsel made an attempt to carry out the plot after Christmas 2000 but backed out because Quick's boyfriend was in her residence. Ultimately, Deichsel gave a statement in which she admitted that she had lied about her involvement in previous statements and in which she admitted that the first attempt was made on January 2, 2001. She also told detectives that she accompanied Scott on January 8 and served as a lookout before and after the assault.
¶4. Deichsel was charged with one count of conspiracy to commit first-degree intentional homicide in violation of Wis. Stat. §§ 940.01(1)(a) and 939.31. She subsequently entered a guilty plea to the charge. At the request of both the State and Deichsel, the circuit court ordered a presentence investigation (PSI).
¶5. In the PSI, Deichsel repudiated all of her inculpatory statements to detectives and flatly denied instigating or planning the assault on Quick. She insisted that he forced her to accompany him on January 8, 2001, and she disposed of the evidence at his insistence. The PSI author reported that Deichsel denied any family dysfunction or current emotional health problems. The PSI related Deichsel's mother's report that Deichsel struggled in school as a result of attention deficit disorder and dyslexia, her observation that Deichsel "could be talked into about anything," and her belief that this is why Deichsel made the series of incriminating statements to detectives. The author concluded with the opinion that Deichsel was raised in a supportive, pro-social family and was mentally healthy.
¶6. A private PSI was prepared on behalf of Deichsel. The version of events she related to the author closely parallels the statement she gave to detectives on January 24, 2001. She denied that she had instigated or planned the assault. The author described Deichsel's family as close-knit, reported her mother's conclusion that she was a follower and struggled academically, and did not report any emotional health issues.
¶7. At the sentencing hearing, Deichsel's level of involvement in the assault was a hotly debated issue. The State presented the lead investigator who detailed the interviews she had with Deichsel, from her initial denial of any involvement in the assault to her painstaking revelations of intimate involvement in the assault. The State relied on this testimony to argue that Deichsel was involved in the instigation and planning of the assault and that while there may be differences between Scott's and Deichsel's specific actions, their actions were so interwoven that it had to be concluded that Deichsel was as culpable as Scott. Deichsel's attorney countered that Scott had been the sole motivator behind the assault and Deichsel was less culpable; he portrayed her as being dominated by Scott. Defense counsel, a long-time family friend, related that although Deichsel struggled academically, she was from a wonderful family.
¶8. In stating reasons for the sentence imposed, the trial court led off with a discussion on the severity of the offense. The court rejected the defense argument that Deichsel went along for a ride on the day of the assault and was not involved in the instigation or planning of the assault. Nevertheless, it commented that "[u]nder such a circumstance, certainly that would be considered a very minimal involvement for which the penalties would not necessarily be as significant." The court reviewed the statements Deichsel made, found that "the more damning parts were corroborated by the co-defendant," and concluded that Deichsel was "intimately involved in the planning" of the assault on Quick. In discussing Deichsel's character, the court acknowledged that she had learning disabilities, but rejected the conclusion that her learning disabilities were the reason for the conflicting statements she gave. Rather, the court concluded that they "were simply conflicting statements to try to evade responsibility for this offense." The court focused on Deichsel's need for counseling because she was a follower. The court then imposed a sentence of twenty-five years' imprisonment; the first ten years in confinement, followed by fifteen years of extended supervision.
¶9. Deichsel filed a motion for modification of sentence, contending there were three "new factors" that required a downward modification of her sentence. First, information supporting her lack of involvement in the assault; second, a diagnosis of mental illness; and, third, information that she did not come from an open and supportive family. In support of her motion, she submitted the testimony and report of R. Bronson Levin, a clinical and forensic psychologist, along with the affidavit and testimony of her sister, Tamara Sue Gallenberg. The latter provided information that Deichsel could not have participated in the attempt on January 2, 2001, as Scott has claimed because Gallenberg spent the evening with Deichsel at their parent's home.
¶10. Dr. Levin testified that he disagreed with the family being portrayed as close-knit and free of mental illness. He found the family to have a strong history of mental illness and concluded that Deichsel "inherited a strong disposition toward becoming mentally ill." Dr. Levin diagnosed Deichsel with three emotional conditions: generalized anxiety disorder, severe depression and dependent personality disorder. He opined that these three emotional conditions have had a negative impact on her. Because of her fear of failure, the only decisions she could make were how she could please those who were in her life. Her mental conditions also had a negative impact upon her academically.
¶11. He offered the opinion that because of her emotional conditions, Deichsel would "over confess" when confronted with pressure. He concluded that this is what happened on June 11, 2001, when Deichsel acknowledged that she had lied in her previous statements and confessed to participating in the January 2 attempt with Scott, accompanying him on the morning of the attack and serving as a lookout and driver. He finally offered the opinion that instigating and planning the assault was inconsistent with Deichsel's character.
¶12. Dr. Levin also testified that there were several reasons why this information did not come out at the sentencing. First, the family has a prejudice against mental health providers, so they do not recognize that there is mental illness within the immediate family and would be too proud to share such information outside of the family. Second, the family is blind to their mental health issues, so they would not accurately relate those issues to a third person. Third, because Deichsel did not have an independent relationship with her trial counsel, she was uncomfortable sharing information with her attorney because he was a family friend and her parents were paying the fees.
¶13. The trial court denied the motion for modification, finding that Deichsel failed to present any "new factors;" and, even if she had, they did not frustrate the purpose of the sentence.
[That the court was lied to at the time of sentencing about Corrina's personality and family background] to this court is the central issue. The court may have been "lied to" at sentencing but the person doing the "lying" was the Defendant. To find a "new factor" here this court would find would set an incredibly dangerous precedent.
Basically, a Presentence was prepared. The Defendant was questioned with regard to all of those relevant factors with regard to emotional issues, psychological issues and beyond that there was a separate report prepared on behalf of the defense from Zangl Counseling Services in which again those issues could have been addressed by the defense at that time and by the Defendant.
To basically allow one strategy to be used at sentencing, then it doesn't necessarily go the way that that party wants it to go and then come back to court and now argue it's a new factor because this defendant had these underlying psychological issues, would then open a case such as this up for lack of a better term two kicks at the cat.
The court commented that Deichsel's emotional condition, as described by Dr. Levin, did not change its opinion that Deichsel was significantly involved in the assault. It rejected Dr. Levin's opinion that Deichsel "over confessed" because it believed Deichsel gave a series of inculpatory statements which established that she did more than sit in the car when Scott assaulted Quick. Deichsel appeals.
¶14. To obtain sentence modification, a defendant must establish that
(1) a "new factor" exists and (2) the "new factor" justifies sentence modification. State v. Franklin, 148 Wis. 2d 1, 8, 434 N.W.2d 609 (1989). Whether a fact or set of facts constitutes a "new factor" presents a legal issue which we decide de novo. Id. Whether a "new factor" justifies sentence modification, however, presents an issue for the trial court's discretionary determination, subject to our review under the erroneous exercise of discretion standard. Id.

¶15. A "new factor" is a fact or set of facts highly relevant to the imposition of sentence but not known to the trial judge at the time of the original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties. Rosado v. State, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). Further, a new factor is "an event or development which frustrates the purpose of the original sentence." State v. Michels, 150 Wis. 2d 94, 99, 441 N.W.2d 278 (Ct. App. 1989). Erroneous or inaccurate information used at sentencing may constitute a new factor if it was highly relevant to the imposed sentence and was relied upon by the trial court. State v. Smet, 186 Wis. 2d 24, 34, 519 N.W.2d 697 (Ct. App. 1994). A defendant bears the burden of proving the existence of a new factor, i.e., that the information was inaccurate and the information was actually relied on by the trial court at sentencing, by clear and convincing evidence. Franklin, 148 Wis. 2d at 8-9; see also State v. Littrup, 164 Wis. 2d 120, 132, 473 N.W.2d 164 (Ct. App. 1991).
¶16. We first consider Deichsel's contention that evidence from her sister that she did not participate in the January 2 attempt is a new factor. To constitute a new factor, the facts must have been unknown to the trial judge at the time of sentencing because the facts were either unknown or unknowingly overlooked at the time of sentencing. Rosado, 70 Wis. 2d at 288. This evidence is not a new factor for two reasons: first, it was known to Deichsel more than seven months before sentencing since a defense private investigator had obtained a statement from Deichsel's sister containing the assertion that Deichsel did not go along on the January 2 attempt; second, Deichsel's sister included this same statement in a letter she wrote the court prior to sentencing.
¶17. Even if we were to independently conclude that the sister's information presented a new factor, we would agree with the trial court that a modification of the sentence is not warranted. At sentencing, the trial court commented that if all Deichsel did on the day of the assault was to accompany Scott, that would be minimal involvement calling for a lesser sentence. However, the trial court went on to compare all of Deichsel's statements with other evidence and concluded that there was corroborating evidence which convinced it that Deichsel was intimately involved in the assault. The court also observed that Deichsel's conflicting statements were simply an attempt to evade responsibility. Our independent review of the record supports the trial court's determinations that Deichsel was actively involved in the assault, her statements at sentencing and postconviction are nothing more than self-serving, and, therefore, she is not entitled to a modification of her sentence. Franklin, 148 Wis. 2d at 8.
¶18. To support her assertion that she was minimally involved, Deichsel relied upon Dr. Levin's conclusion that she "over confessed." She reasoned that her emotional state, and not her actual involvement, was the sole reason she made inculpatory statements. The trial court rejected the testimony that Deichsel's inculpatory statements were the result of over confessing arising from her emotional disorders which set off her desire to be compliant when in the company of authority. The court reasoned that Deichsel's statements were self-serving and other evidence corroborated those statements in which Deichsel admitted an active role in the assault. We agree with the trial court that this argument is nothing more than an attempt by Deichsel to spin existing evidence in a different direction and does not constitute a new factor.
¶19. Next, we will consider Deichsel's assertions that her mental health and family history are new factors. These assertions are not new factors; the evidence regarding Deichsel's mental health and her family history was in existence at the time of the sentencing. As Dr. Levin reports, the evidence was knowingly overlooked by Deichsel.
Information about this family that I unearthed was not revealed as an attempt by Ms. Deichsel to lessen her responsibility. It was hard for her to break the family bond of secrecy about problems and tell me about her childhood, and it was hard for her parents to admit to even some of the events that Ms. Deichsel reported.
To constitute a new factor, the evidence must have been overlooked by all of the parties. State v. Kluck, 210 Wis. 2d 1, 7, 563 N.W.2d 468 (1997).
¶20. It is obvious from Dr. Levin's report that Deichsel did not overlook this evidence. She made a conscious decision to pursue a sentencing strategy to appear less responsible for the assault by portraying herself as a mentally stable person from a strong family background who had come under the criminal influence of Scott.[1] The trial court rejected that strategy:
As to protection of the public, there are those that would say that this defendant is fine without Mr. [Scott] Deichsel being around her. Given again these statements, the fact that there has not been a true acceptance of responsibility, there is a concern on this court's part that this defendant does continue to pose a danger to others.
¶21. The trial court declined to accept Deichsel's characterization that her mental health and family history were new factors. The court reasoned that the evidence was neither unknown or unknowingly overlooked at sentencing. Rather, it concluded that Deichsel was unhappy with the result and is now trying for a second kick at the cat by recasting evidence that existed at the time of sentencing into a different argument.
¶22. We agree with the trial court that a defendant does not meet her burden of proving a new factor by clear and convincing evidence by wrapping previously known evidence in different paper. "Just as a new expert opinion based on previously known or knowable facts is `nothing more than the newly discovered importance of existing evidence' ... not newly discovered evidence for purposes of plea withdrawal," a defendant's rearrangement of previously known facts is not a new factor for sentence modification purposes. State v. Grindemann, 2002 WI App 106, ¶25, 255 Wis. 2d 632, 648 N.W.2d 507 (citation omitted), review denied, 2002 WI 121, 257 Wis. 2d 117, 653 N.W.2d 889 (Wis. Sept. 26, 2002) (No. 01-0542-CR).
¶23. We agree with the trial court's conclusion that Deichsel's mental health and family history did not constitute new factors that would justify sentence modification. The trial court declared that even if Deichsel had presented her true mental health and family history at the time of sentencing, her significant involvement in the assault justified the sentence imposed. This conclusion is supported by the record and is an appropriate exercise of the trial court's discretion. Franklin, 148 Wis. 2d at 8.
By the Court.  Order affirmed.
NOTES
[1] During sentencing, the trial court noted that both Deichsel and Scott pursued the same strategy, "What was incredibly interesting to this court has been in reading the Defendant's versions and the statements from the family" and the same information from Scott and his family. "[I]t was incredibly interesting that both of these reports are mirror images in terms of deflection of responsibility and opinions from family members."