State of Wisconsin, Plaintiff-Respondent,
v.
Keith R. Randolph, Defendant-Appellant.
No. 03-2961-CR.
Court of Appeals of Wisconsin.
Opinion Filed: August 31, 2004.
Before Wedemeyer, P.J., Fine and Curley, JJ.
¶1 PER CURIAM.
Keith R. Randolph, pro se, appeals from an order denying his postconviction motion to modify his sentence.[1] He appears to contend that new factors warrant the modification of his sentence. Specifically, he argues that his sentence was based on inaccurate information, his sentence was unduly harsh and unconscionable, and the State breached the plea agreement, entitling him to plea withdrawal.[2] Because there are no new factors that warrant sentence modification and Randolph has failed to establish that he was sentenced on the basis of inaccurate information; the sentence was not unduly harsh or unconscionable; and Randolph is not entitled to plea withdrawal, we affirm.

I. BACKGROUND.
¶2 Pursuant to a plea agreement, Randolph pled guilty to four counts of attempting to obtain possession of a controlled substance by misrepresentation on June 15, 2001. He was sentenced to four consecutive sentences of two years' imprisonment, each consisting of one year of initial confinement and one year of extended supervision, to be served consecutively to the sentence he was already serving. He did not file a direct appeal.
¶3 On August 28, 2003, however, he filed a motion to modify his sentence, alleging, among other things, that the trial court relied on inaccurate information when imposing sentence; that the trial court failed to give sufficient weight to the fact that he was already serving time for another charge; that he was being denied drug treatment, which defeats the objective of his sentence; and that he did not understand the plea agreement because the sentence structure was "tricky."[3] The trial court denied that motion in a written order. He now appeals.

II. ANALYSIS.

A. There are no new factors that warrant sentence modification, and Randolph has failed to establish that he was sentenced on the basis of inaccurate information.
¶4 Prior to sentencing, Randolph offered to cooperate with detectives in an effort to solve an unexplained murder. He provided information, but ultimately the missing body was never located and he was unable to give a complete account of what occurred. During sentencing, the trial court discussed Randolph's cooperation as a mitigating factor in fashioning his sentence, but the trial court limited its relevance as the body was never found and the crime was never solved. Randolph contends that "everyone in the courtroom unknowingly overlooked [the trial court's] errors when he stated, to the contrary of factual basis, that `...there is a family out there with a loved one lost and a body that has never been found[.]'" (Emphasis omitted.) Randolph insists that the trial court used this "to form part of his basis for [Randolph's] sentence" and argues that he should be resentenced as a result. He asserts that "[i]t simply does not make sense to [him] that a judge would give him some credit for his cooperation, and then reduce that amount, however much of credit it was, based upon inaccurate information." He asserts that this "erroneous" act by the trial court constitutes a new factor that warrants sentence modification, presumably because he does not believe that whether the body was ever found is relevant.
¶5 Randolph also argues that the purpose of his sentence is being frustrated because his rehabilitative needs have been ignored, as he asserts that he has not received any treatment since he has been confined. He insists that the trial court focused on his need for treatment when he was sentenced, and his lack of treatment thus constitutes a new factor.
¶6 Sentence modification on the basis of a new factor is a two-step process. State v. Franklin, 148 Wis. 2d 1, 8, 434 N.W.2d 609 (1989). First, the defendant must demonstrate, by clear and convincing evidence, that there is a new factor justifying a motion for sentence modification. Id. at 8-9. If the defendant has demonstrated the existence of a new factor, the trial court must determine whether the new factor justifies modification. Id. at 8. "Whether a set of facts is a `new factor' is a question of law which we review without deference to the trial court." State v. Michels, 150 Wis. 2d 94, 97, 441 N.W.2d 278 (Ct. App. 1989). "Whether a new factor warrants a modification of sentence rests within the trial court's discretion." Id.
¶7 "[T]he phrase `new factor' refers to a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." Rosado v. State, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975). However, "the case law since Rosado has limited the `new factor' standard to situations where the new factor frustrates the purpose of the original sentencing." Michels, 150 Wis. 2d at 97. Thus, "[t]here must be some connection between the factor and the sentencingsomething which strikes at the very purpose for the sentence selected by the trial court." Id. at 99.
¶8 Furthermore, "[a] defendant has three due process rights at sentencing: (1) to be present at the hearing and to be afforded the right to allocution, (2) to be represented by counsel, and (3) to be sentenced on the basis of true and correct information." State v. Borrell, 167 Wis. 2d 749, 772, 482 N.W.2d 883 (1992). Yet, while "[d]efendants have a due process right to be sentenced on the basis of accurate information[,] a defendant who requests resentencing based on inaccurate information must show both that the information was inaccurate, and that the court actually relied on the inaccurate information in the sentencing." State v. Johnson, 158 Wis. 2d 458, 468, 463 N.W.2d 352 (Ct. App. 1990) (citation omitted). Further, "[c]riminal defendants should not be able to question the validity of the results of the sentencing process except for clear and convincing reasons." State v. Littrup, 164 Wis. 2d 120, 131-32, 473 N.W.2d 164 (Ct. App. 1991). Thus, Randolph "has the burden of proving by clear and convincing evidence both the inaccuracy prong and the prejudice prong of the due process test." Id. at 132.
¶9 Randolph's arguments regarding the trial court's comments fail to establish, by clear and convincing evidence, either that he was sentenced on the basis of inaccurate information or that a new factor exists warranting sentence modification. Although he argues that the trial court's comments concerning the fact that the body was never found were inaccurate, he does not dispute that the body was never found. He suggests that it should not matter whether the body was found, because he claims "the body being found was never an issue[,]" and the trial court's comments relating to that fact were somehow inaccurate as a result. In denying his postconviction motion, the trial court explained:
[W]hen a person claims to deserve credit for cooperating in a homicide investigation, to measure the credit I have to determine the effectiveness of the cooperation. We give credit to those who cooperate in homicide investigations because solving the crime makes a difference to the community, including the victims of the crime. In Mr. Randolph's case, I could not give him the credit that I might give another person who cooperated because not only was the crime not solved (which I illustrated and emphasized by pointing out that the body has not been found), but Mr. Randolph sat on the information rather than bringing it forward at an earlier, and perhaps more instrumental, time. I believe I gave Mr. Randolph all the credit he deserved for the limited cooperation he offered.
The trial court's explanation was reasonable, the information was not inaccurate, and Randolph has failed to establish that he was sentenced on the basis of inaccurate information.
¶10 Moreover, merely infusing a legal standard into a sentence within an argument does not make it relevant and amendable to the facts of the case. Stating that "everyone in the courtroom unknowingly overlooked [the trial court's] errors when he stated, to the contrary of factual basis, that `... there is a family out there with a loved one lost and a body that has never been found[,]'" (emphasis added and omitted), an obvious reference to the Rosado language, for example, does not create a valid "new factor" argument. Randolph has failed to convince us that this argument falls under the "new factor" standard, and, as such, he has not met his burden.
¶11 In regard to his contention that his lack of treatment constitutes a new factor warranting sentence modification, Randolph has again failed to persuade us. The trial court did consider Randolph's treatment needs, but did not make those needs the objective of his sentence. Indeed, in rejecting his claim that his lack of treatment constitutes a new factor warranting sentence modification, the trial court concluded:
Although I agree with his contention that, as a matter of policy, inmates with addictions should be treated before being released, and while I join in his hope that he receives treatment, it was not one of my sentencing objectives. To the contrary, I found that protecting the community was paramount. Because his lack of treatment does not frustrate my purposes in sentencing him to prison for as long as I did, I am not empowered to modify his sentence, nor would modification be justified.
Thus, contrary to Randolph's contentions, the trial court did not base Randolph's sentence upon his need for treatment. The trial court properly concluded that his lack of treatment did not warrant sentence modification as it did not frustrate the purpose of the original sentencing.
¶12 Finally, Randolph also contends that the "newly created" WIS. STAT. § 973.195 is a new factor, in and of itself, warranting modification of his sentence. As noted, Randolph attacks the statute at length, but he fails to adequately explain how this statute constitutes a new factor warranting sentence modificationhe fails to clearly explain how § 973.195, in and of itself, is a fact or set of facts highly relevant to the imposition of his sentence that frustrates the purpose of his original sentencing. As such, his contention fails.

B. The sentence was not unduly harsh or unconscionable.
¶13 Randolph cites Cresci v. State, 89 Wis. 2d 495, 278 N.W.2d 850 (1979), in support of his contention that his sentence should be modified because it was unduly harsh or unconscionable. However, the language he cites provides only that "[w]hile the trial court may not revise a sentence merely upon `reflection,' it may review its sentence for abuse of discretion based upon its conclusion that the sentence was unduly harsh or unconscionable." Id. at 504 (citation omitted). In that case, the State argued that the trial court was without authority when it modified its original sentence, and the supreme court concluded that the trial court acted within its discretion in modifying the sentence based upon its conclusion that the original sentence was overly harsh. Nothing of the sort happened here. As such, the authority Randolph cites is irrelevant to his case.
¶14 However, if we construe Randolph's argument as an attempt to challenge the trial court's exercise of sentencing discretion, that contention fails as well. Sentencing is well within the discretion of the trial court, State v. Larsen, 141 Wis. 2d 412, 426, 415 N.W.2d 535 (Ct. App. 1987), and "[t]he trial court has great latitude in passing sentence[,]" State v. J.E.B., 161 Wis. 2d 655, 662, 469 N.W.2d 192 (Ct. App. 1991). Our review "is limited to determining whether there was an [erroneous exercise] of discretion." Larsen, 141 Wis. 2d at 426 (citation omitted). "`[S]entencing decisions of the [trial] court are generally afforded a strong presumption of reasonability because the [trial] court is best suited to consider the relevant factors and demeanor of the convicted defendant.'" State v. Gallion, 2004 WI 42, ¶18, 270 Wis. 2d 535, 678 N.W.2d 197 (citation omitted). Moreover, "[a]n [erroneous exercise] of discretion will be found only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances." Ocanas v. State, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975).
¶15 "[J]udges are to explain the reasons for the particular sentence they impose. How much explanation is necessary, of course, will vary from case to case. Judges, however, are required to provide a `rational and explainable basis' for the sentence." Gallion, 270 Wis. 2d 535, ¶39 (citation omitted). Further:
Courts are to identify the general objectives of greatest importance. These may vary from case to case. In some cases, punishment and protection of the community may be the dominant objectives. In others, rehabilitation of the defendant and victim restitution may be of greater import. Still others may have deterrence or a restorative justice approach as a primary objective.
Courts are to describe the facts relevant to these objectives. Courts must explain, in light of the facts of the case, why the particular component parts of the sentence imposed advance the specified objectives.
Courts must also identify the facts that were considered in arriving at the sentence and indicate how those factors fit the objectives and influence the decision.
Id., ¶¶ 41-43. Thus, Gallion requires "that the court, by reference to the relevant facts and factors, explain how the sentence's component parts promote the sentencing objectives." Id., ¶46.
¶16 Here, the court identified the factors it considered and its objectives, and fashioned a sentence well within the permissible range. It considered, among other things, Randolph's bipolar mental illness, his past criminal record, his manipulation of members of the community, his potential, and the fact that he committed new crimes while on probation, in concluding that inevitably prison time would need to be imposed. The trial court noted:
And your life is by no means over just because a certain portion of it has to be spent in prison. If it has to be spent in prison it's because we have to strike a balance between what you deserve and what our community deserves and in this case our community deserves protection. You are a skillful manipulator; not just a manipulator, you are an intelligent thief. Not just a thief, you are a potent force for wrong unless you are either incapacitated or through your incapacitation you learn that there are certain serious consequences.
It considered the facts that Randolph pled guilty, attempted to help the State solve a murder case, and was already serving another sentence. Yet, the trial court concluded that the protection of the community was of paramount importance and sentenced him to four years, combined, of initial confinement. As such, by addressing the relevant facts and factors and how they affect or relate to the sentencing objectives, the trial court properly exercised its sentencing discretion.

C. Randolph is not entitled to plea withdrawal.
¶17 Finally, Randolph argues that he should be allowed to withdraw his guilty plea because he contends that the State breached the plea agreement. He asserts that the agreement was "mathematically complex and highly improbable," the district attorney used "Randolph[']s old conviction files pretending he had gotten breaks[,]" the district attorney "knew full well that each count carried a minimum prison term of one-year confinement and to merely reduce the [S]tate[']s offer by 6 months was a manipulation ploy[,]" and had he known of the minimum sentences at the time of his plea, he would not have pled guilty "unless the district attorney had changed the plea agreement to three years and read in one of the counts." As such, although Randolph cites no legal authority regarding the alleged plea bargain breach requiring a guilty plea withdrawal, we construe his argument to contend that he did not knowingly, voluntarily, and intelligently enter his guilty plea. We disagree.
¶18 "The withdrawal of a guilty plea is not a `right,' but is addressed to the sound discretion of the trial court and will be reversed only for an [erroneous exercise] of that discretion." State v. Booth, 142 Wis. 2d 232, 237, 418 N.W.2d 20 (Ct. App. 1987). After sentencing, the defendant is required to show a "manifest injustice" in order to be entitled to plea withdrawal. Id. at 235; State v. Nawrocke, 193 Wis. 2d 373, 378, 534 N.W.2d 624 (Ct. App. 1995). That showing must be by clear and convincing evidence, and the burden of proof is on the defendant. See State v. Rock, 92 Wis. 2d 554, 559, 285 N.W.2d 739 (1979). "The `manifest injustice' test is rooted in concepts of constitutional dimension, requiring the showing of a serious flaw in the fundamental integrity of the plea." Nawrocke, 193 Wis. 2d at 379.
¶19 While "[a] plea [that] is not knowingly, voluntarily[,] or intelligently entered is a manifest injustice[,]" State v. Giebel, 198 Wis. 2d 207, 212, 541 N.W.2d 815 (Ct. App. 1995), Randolph has failed to establish by clear and convincing evidence that his plea was not knowingly, voluntarily, or intelligently entered. First, he never objected to this alleged breach before he was sentenced. Second, at sentencing, he even stated: "And I don't think the District Attorney's offer is too far-fetched. However, I have asked my attorney, which he's done, to ask you for two years consecutive time." Third, even if the statutes required that each count carried a minimum of one-year of initial confinement, the plea agreement provided only a "recommendation of eight and a half, 8.5 years of imprisonment broken down as 3.5 years of initial confinement followed by five years extended supervision." As noted by the State, although each of the counts may have carried a one-year minimum for initial confinement, there was nothing barring the court from imposing them concurrently, and thus, four years of initial confinement was not the least amount of initial confinement possible. Consequently, the record supports the conclusion that Randolph entered his plea knowingly, voluntarily, and intelligently. For these reasons, we affirm.
By the Court.  Order affirmed.
NOTES
[1] Randolph also seeks to appeal the trial court's denial of his petition for sentence adjustment under WIS. STAT. § 973.195 (2001-02). It is unclear whether properly presented WIS. STAT. § 973.195 motions are appealable. However, here, Randolph's arguments concerning the "various problems" created by § 973.195, including those regarding alleged separation of powers issues and vagueness, are irrelevant because none of those "problems" applied to him. We will address Randolph's arguments concerning § 973.195 only insofar as he asserts that it constitutes a new factor warranting sentence modification. All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] Many of Randolph's arguments are difficult to understand. We address only those arguments that we could glean from the briefs.
[3] Randolph also argued that he deserves sentence modification pursuant to WIS. STAT. § 973.195. After the trial court denied the motion for sentence modification, Randolph filed a § 973.195 petition for sentence adjustment. That was also denied, although the trial court also indicated that it was not acknowledging the applicability of § 973.195 to Randolph's sentence. As noted, he has failed to cite any authority, and it is unclear whether such a denial is a proper subject of appeal in this court. Assuming, arguendo, that it is, a review of the order denying his petition indicates that the trial court properly exercised its discretion when it indicated that adjustment of Randolph's sentence would not be in the public interest and also indicated that:

The number of conduct reports demonstrates that the defendant has not positively adjusted his conduct and that he is not an appropriate candidate for sentence adjustment. In addition, the court finds that the full time designated for initial confinement at sentencing is necessary to punish and deter the defendant. It would unduly depreciate the seriousness of the offense if the defendant did not serve 100% of the confinement time as ordered by the court. Adjusting the confinement time would compromise the intent of the sentencing court and defeat the purpose of the sentence, which was punishment, deterrence, and community protection.