STATE of Wisconsin, Plaintiff-Respondent,

v.

Wayne DELANEY, Defendant-Appellant.

Court of Appeals

*No. 2004AP3131–CR. Submitted on briefs November 29, 2005.
—Decided February 8, 2006.*

2006 WI App 37

(Also reported in 712 N.W.2d 368.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Wayne R. Delaney*, pro se.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Maura FJ Whelan*, assistant attorney general.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. NETTESHEIM, J.   Wayne Delaney appeals pro se from an order denying his motion for sentence modification. He raises an argument that we are seeing with increasing frequency of late:   that a 1994 letter from then Wisconsin Governor Tommy G. Thompson to the Department of Corrections (DOC) regarding the mandatory release of violent offenders negatively affected his parole eligibility and therefore constitutes a new factor requiring resentencing. We agree with the trial court that Delaney did not clearly and convincingly establish that the Thompson letter constitutes a new factor. We affirm the order.

## BACKGROUND

¶ 2.   The facts are undisputed. Delaney was convicted in 1994 after pleading guilty to one count of armed robbery, two counts of sexual assault with a dangerous weapon and two counts of false imprisonment with a dangerous weapon, all as party to a crime. The charges derived from an incident in which Delaney —drunk, stoned, and high on cocaine—and an acquaintance broke into a motel room and terrorized the occupants over a period of several hours.[1]

¶ 3.   On June 10, 1994, Judge Dennis J. Flynn sentenced Delaney to three consecutive ten-year prison terms on the armed robbery and sexual assault convictions, and imposed and stayed consecutive eighteen-month sentences on the two false imprisonment convictions.

¶ 4.   Delaney's first discretionary parole hearing was in 2001. He was not released, and further parole

---

[1] Delaney, seventeen at the time of the crimes, was waived into adult court.

consideration was deferred until August 2005. Meanwhile, in October 2004, Delaney moved pro se for sentence modification, contending that a change in parole board policy constituted a "new factor" entitling him to resentencing. In support, Delaney relied on an April 28, 1994 letter from then Governor Thompson to then DOC Secretary Michael J. Sullivan instructing Sullivan and the DOC to "pursue any and all available legal avenues to block the release of violent offenders who have reached their mandatory release date" so as to keep prisoners classified as violent locked up "as long as possible."

¶ 5. Delaney argued that the Thompson letter frustrated the purpose of his sentence because Judge Flynn had fashioned a sentence with the expectation that Delaney would be parole eligible after serving 25% of the sentence under then-existing law. Delaney also contended that the Thompson letter in effect lengthened his sentence and therefore constituted an ex post facto violation.

¶ 6. Judge Gerald P. Ptacek conducted a telephonic hearing on Delaney's motion on November 11, 2004. Judge Ptacek determined that the Thompson letter was not a new factor under the law and that, even if it was, the parole board's discretionary decision did not frustrate the sentence imposed by Judge Flynn. Therefore, Judge Ptacek denied Delaney's motion, and Delaney appeals.

## DISCUSSION

### A. Law of New Factors

¶ 7.   To have his sentence modified, Delaney must overcome two hurdles. First, he must demonstrate that

a new factor exists. *State v. Franklin,* 148 Wis. 2d 1, 8, 434 N.W.2d 609 (1989). If so, he next must demonstrate that the new factor warrants sentence modification. *Id.* Whether a fact or set of facts constitutes a new factor is a question of law this court decides without deference to the circuit court's determination. *Id.* Whether the new factor warrants sentence modification, however, is a matter we entrust to the circuit court's discretion. *Id.*

¶ 8.   A new factor is a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties. *Id.* The effect of the "new factor" must frustrate the purpose of the original sentencing. *State v. Michels,* 150 Wis. 2d 94, 97, 441 N.W.2d 278 (Ct. App. 1989).

¶ 9.   The existence of a new factor must be shown by clear and convincing evidence. *Franklin,* 148 Wis. 2d at 8–9. "In order for a change in parole policy to constitute a new factor, parole policy must have been a relevant factor in the original sentencing. It is not a relevant factor unless the court expressly relies on parole eligibility." *Id.* at 15.

B. New Factor Law Applied to This Case

¶ 10.   We agree with Judge Ptacek that Delaney has not clearly and convincingly shown that the Thompson letter constitutes a new factor, or, even if it does, that it warrants a sentence modification. We first observe that the Thompson letter was issued *before*

Delaney's sentencing before Judge Flynn, which raises the prospect that the judge was aware of the letter. However, the appellate record is silent on this point, so we will accept Delaney's premise that Judge Flynn was not aware of the letter.

¶ 11. Delaney was sentenced in 1994 under Wisconsin's system of indeterminate sentencing.[2] Under that system, a convicted defendant generally became parole eligible after serving 25% of the sentence. WIS. STAT. § 304.06(1)(b) (1993–94);[3] *State v. Crochiere*, 2004 WI 78, ¶ 6, 273 Wis. 2d 57, 681 N.W.2d 524. Delaney contends that Judge Flynn was aware of that parole policy and so must have sentenced him with that in mind—in essence, "oversentencing" him so that 25%, rather than the full term, actually represents the sentence that Judge Flynn intended.

¶ 12. We decline to join Delaney's speculation as to Judge Flynn's thoughts. Instead, we limit our review to the judge's actual words. The June 10, 1994 sentencing transcript reveals that Judge Flynn neither expressly relied on nor discussed parole policy. Nor did the judge address the April 28, 1994 Thompson letter, the

---

[2] The indeterminate sentencing structure was dramatically altered through two truth-in-sentencing acts, 1997 Wis. Act 283 and 2001 Wis. Act 109, effective on December 31, 1999, and February 1, 2003, respectively. *State v. Crochiere*, 2004 WI 78, ¶ 5, 273 Wis. 2d 57, 681 N.W.2d 524.

[3] WISCONSIN STAT. § 304.06(1)(b) (1993–94) provided that "the parole commission may parole an inmate of the Wisconsin state prisons . . . when he or she has served 25% of the sentence imposed for the offense, or 6 months, whichever is greater." That portion of the statute remains essentially unchanged in the current version.

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

parole board's policy generally, or Delaney's prospects for parole in particular. The only time Judge Flynn uttered the word "parole" was when he imposed the sentences on the two false imprisonment convictions:

> [I]t's the order of the Court that these last two sentences, one and a half years on Count 5, one and a half on Count 6, that they be stayed. In lieu thereof you are to be placed on five years of consecutive probation so once you're released from prison and from parole you'll then be on five years probation.

¶ 13. The sentencing transcript reveals that Judge Flynn reviewed Delaney's prior record, which included disorderly conduct and second-degree sexual assault, his substantial drug abuse problem, the lack of success with past treatment efforts, and the "[a]ggravated . . . very, very serious nature" of the crimes for which Delaney was being sentenced. The judge also considered the impact of the crimes on the victims and the community, the need to protect the public, Delaney's need for rehabilitation, and all parties' recommendations for prison. Although Delaney faced up to twenty years' imprisonment on each of three counts (party to armed robbery, and two counts of party to first-degree sexual assault), he was sentenced to three consecutive ten-year terms. Judge Flynn in no way suggested that Delaney would be paroled after serving only one-fourth of the time. To the contrary, the record demonstrates a sentence carefully fashioned after an express consideration of the relevant factors, and Delaney's parole eligibility was not one of those factors.

¶ 14. Delaney nonetheless insists that Judge Flynn must have sentenced him with an eye toward a certain parole date. In support, he looks to *State v. Borrell,* 167 Wis. 2d 749, 767, 482 N.W.2d 883 (1992),

which called the date of parole eligibility "an essential and integral part of the court's sentencing decision." This is not a *Borrell* case. *Borrell* involved a separation of powers challenge to a statute not at issue here. The challenge was brought by an inmate who was sentenced in 1988 to life imprisonment with no parole eligibility until 2025, with a consecutive twenty-year term on another charge. *Id.* at 760. The supreme court held that it was within the sentencing court's authority to set the defendant's parole eligibility date later than the statutory minimum because of the legislatively granted discretion to fashion a sentence based on the nature of the crime, the public's need for protection and the rehabilitative needs of the convicted defendant. *Id.* at 768–69. *Borrell* describes the interplay of the three branches of government in Wisconsin's system of sentencing: the legislature prescribes the penalty and manner of its enforcement, the courts impose the penalty, and the executive branch grants paroles and pardons. *Id.* at 767. *Borrell* emphasizes that courts have discretion in fashioning sentences, but not in making actual parole decisions. *See id.* at 770. Moreover, *Borrell* plainly states that the legislatively provided possibility of parole creates "no more than a mere hope that the benefit will be obtained." *Id.* at 771 (citation omitted).

¶ 15. Delaney next attempts to tie the Thompson letter to the passage of 42 U.S.C. § 13701, et. seq., the Violent Crime Control and Law Enforcement Act of 1994 (VCCLEA). VCCLEA made available federal money for construction or improvement of correctional facilities to states that implemented truth-in-sentencing laws. Delaney implies that Governor Thompson, influenced by the prospect of federal grants, acted to limit early release for violent offenders. Delaney argues that this frustrated Judge Flynn's "ex-

plicit expectation that the defendant would be considered for early parole-release on the basis of institution behavior . . . ." However, VCCLEA was not enacted until September 13, 1994, three months *after* the Thompson letter was issued and *after* Delaney was sentenced. Delaney offers no evidence or persuasive argument to show how a law passed after his sentencing might have influenced the sentencing judge.

¶ 16. Delaney also fails to show what impact the Thompson letter might have had on his discretionary parole eligibility. The letter refers only to Wisconsin's mandatory release law, not parole eligibility. *See* Wis. Stat. § 302.11(1) (establishing a mandatory release date at two-thirds of the sentence). The law referred to in the letter was amended by 1993 Wis. Act 194, and changed the release date from *mandatory* to *presumptively mandatory* for an inmate serving a sentence for a serious felony committed on or after April 21, 1994. On its face, this cannot apply to Delaney, who committed his crimes in November 1993. Furthermore, when Delaney sought to have his sentence modified, he had not yet served two-thirds of his sentence and thus was not eligible for mandatory release. Until 2014, Delaney will be eligible only for discretionary parole review. The Thompson letter thus does not apply to his situation.

¶ 17. Delaney accords the Thompson letter more weight than it is due. For example, he credits the letter with effectively abolishing parole for all "old release law" violent offenders, and asks rhetorically whether simple coincidence can account for the repeal two years later of Wis. Stat. § 304.06(1r) (1993–94).[4] However, Delaney ignores the fact that the letter, although writ-

---

[4] Wisconsin Stat. § 304.06(1r) (1993–94) provided in relevant part that the parole commission "shall grant release on

ten by the governor, simply did not carry the force of law. To the contrary, the letter was addressed to the DOC secretary, who has no role in making parole decisions, instead of to the parole commission, the entity that does. *See* Wis. Stat. §§ 301.03(3), 304.01 and 304.06. The parole commission is attached to the DOC, but is not subject to the control of the DOC secretary. *See* Wis. Stat. §§ 15.145(1), 15.03.

¶ 18.   Furthermore, the Thompson letter did not purport to change the law. Instead, it was conditioned upon compliance with existing law, plainly directing the DOC to pursue "all available legal avenues . . . to keep violent offenders in prison as long as possible under the law." We agree with the State that the letter urged a more aggressive use of, but not a change in, existing law.

¶ 19.   Delaney next recites statistics showing that 4000 prisoners served their sentences to mandatory release from 2000 to 2001, as compared to just 600 from 1992 to 1993. Assuming these statistics are accurate and further assuming they reflect a stricter stance by the parole board when considering parole, it remains for the reasons stated above that Delaney has failed to link this "evidence" under the law of new factors to the Thompson letter. *See Franklin*, 148 Wis. 2d at 11. Moreover, other factors might also explain the statistics cited by Delaney—a different makeup of the prison population, commission of more serious crimes, or greater use of probation for less serious offenses. *See id.*

¶ 20.   Delaney's "Risk Rating Manual" argument likewise falls flat. He contends that there "still roams . . . the halls of the Parole Commission" the "self-made rule" that length of sentence imposed "has three times the

parole unless there are overriding considerations not to do so," if the inmate is both eligible under sub. (1) and meets one of two education-related criteria.

724

influence of all other factors combined in determining the length of time actually served." This contention goes nowhere for two reasons: (1) the argument is based on a 1982 document, which literally removes it from the realm of "new" factor; and (2) the argument already has been considered and rejected by our supreme court. *See id.* at 11–12.

¶ 21. In summary, Delaney has failed to establish that the Thompson letter was a new factor. The letter had nothing to do with parole and, even if we were to assume that it did, the prospect of parole played no demonstrated role in Judge Flynn's sentencing of Delaney. As such, Judge Ptacek correctly rejected Delaney's argument for sentence modification under the law of new factors.

C. Alleged Ex Post Facto Violation

¶ 22. Finally, Delaney argues that the Thompson letter and the alleged resulting change in parole policy offends the ex post facto clause because it retroactively and substantially decreased his parole eligibility, in effect increasing his punishment.

¶ 23. An ex post facto law includes any law which was passed after the commission of the offense for which the party is being tried. *State ex rel. Britt v. Gamble*, 2002 WI App 238, ¶ 23, 257 Wis. 2d 689, 653 N.W.2d 143 (citation omitted). When determining whether there was an ex post facto violation, we look to see whether the application of the new law violates one or more of the recognized protections offered by the ex post facto clause. *Id.* Specifically, we determine whether the application of the new law: (1) criminalizes conduct that was innocent when committed, (2) increases

725

the penalty for conduct after its commission, or (3) removes a defense that was available at the time the act was committed. *Id.*

¶ 24.  We summarily reject Delaney's ex post facto argument. We have already explained that the Thompson letter did not have the force of law and otherwise did not constitute or produce a change in parole policy. Thus, contrary to Delaney's logic, his sentence was not functionally lengthened. Delaney was sentenced to three consecutive ten-year sentences with the prospect of discretionary parole consideration. That remains unchanged to this day. As a result, Delaney has failed to establish an ex post facto violation. *See id.,* ¶ 24.

## CONCLUSION

¶ 25.  Delaney has not demonstrated the existence of a new factor warranting a modification of his sentence. None of his arguments persuades us that the Thompson letter led to a change in parole policy such that the intent of the original sentence was frustrated. Finally, Delaney's thirty-year sentence has not been extended after the fact so as to offend the ex post facto clause. We affirm the order denying Delaney's motion for sentence modification.

*By the Court.*—Order affirmed.