STATE of Wisconsin,
Plaintiff-Respondent,†

v.

Lorenzo WOOD,
Defendant-Appellant.

Court of Appeals

*No. 2006AP1338–CR. Submitted on briefs April 3, 2007.*
*—Decided July 17, 2007.*

2007 WI App 190

(Also reported in 738 N.W.2d 81.)

† Petition to review denied 10/10/07.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael D. Kaiser* of *Hartland*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Rebecca Rapp St. John*, assistant attorney general and *Peggy A. Lautenschlager*, attorney general.

Before Fine, Curley and Kessler, JJ.

¶ 1. KESSLER, J. Lorenzo Wood appeals from an order resentencing him over his repeated objections. Because the trial court, after concluding that a new

factor in support of sentence modification had not been established, did not deny the motion, but instead converted the motion for sentence modification to a motion to vacate sentence, over the repeated objections of a *pro se* defendant, and then granted the converted motion and resentenced the defendant, we reverse and remand with instructions to vacate the sentence now in effect, to deny the motion to modify the sentence and to reinstate the sentence originally imposed with credit for all time served from the date the original sentence was vacated.

## BACKGROUND

¶ 2. Wood pled guilty to armed robbery, threat of force, in violation of WIS. STAT. § 943.32(2) (1999–2000).[1] He was sentenced to ten years in prison, consecutive to prior sentences. At sentencing on February 2, 2000, the Honorable Kitty K. Brennan stated:

> I also have to take into consideration parole. This is not a truth-in-sentencing case. This is under the old law. Under the old law I know and you know that you will be paroled. *Generally speaking, the Department of Corrections paroles at about 40 to 45 percent of sentence for a crime of this nature.* I know that because the DOC has given us a chart, and it says that on the chart, and *I have taken into consideration when you are likely to be paroled. And that is a factor in the sentence as well.*

(Emphasis added.)

¶ 3. Because of the Milwaukee County system of judicial assignment rotation, three judges have ruled on Wood's case. As noted, Judge Brennan originally imposed sentence. After being sentenced, Wood appar-

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

ently became aware of a letter written in 1994 by then-Governor Tommy Thompson to the Secretary of the Department of Corrections (DOC) in which he directed the DOC "to pursue any and all available legal avenues to block the release of violent offenders who have reached their mandatory release date." Wood's first *pro se* motion to modify sentence, based upon that letter and the above-quoted trial court statements, was filed December 18, 2003, and assigned to the Honorable Richard J. Sankovitz, who determined that the motion was premature as Wood had not served the forty to forty-five percent of his sentence. In May 2005, after completing that portion of the sentence, and not obtaining parole, Wood filed another *pro se* motion for modification of sentence for the same reasons. The second motion was heard by the Honorable Timothy G. Dugan. Over objections from Wood, Judge Dugan construed the motion to modify sentence as a motion for resentencing because the parole policy was not a "new factor," but rather was a mistake of fact because Judge Brennan thought the policy was one thing, but it was actually another. Judge Dugan concluded that Wood was not entitled to modification, but was entitled to be resentenced, then imposed a ten-year sentence, the same sentence that had been imposed by Judge Brennan. That resentencing is the subject of this appeal.

## DISCUSSION

¶ 4. We review a trial court's conclusions of law *de novo*. *Baierl v. McTaggart*, 2001 WI 107, ¶ 14, 245 Wis. 2d 632, 629 N.W.2d 277. Whether a motion states a request for sentence modification based upon a new factor, or for resentencing because the original sentence is invalid, is a legal determination. *See State v. Heg-*

*wood*, 113 Wis. 2d 544, 546–47, 335 N.W.2d 399 (1983). Whether a fact or set of facts constitutes a new factor is a question of law which may be decided without deference to the lower court's determinations. *Id.* at 547.

¶ 5. A new factor, as defined in *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975), is

> a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

A new factor is something that frustrates the purpose of the sentencing court. *See State v. Franklin*, 148 Wis. 2d 1, 14, 434 N.W.2d 609 (1989). "To promote the policy of finality of judgments, strict rules govern the information that can be considered in a request for sentence modification." *State v. Carter*, 208 Wis. 2d 142, 146, 560 N.W.2d 256 (1997) (citing *Franklin*, 148 Wis. 2d at 9).

¶ 6. "When a resentencing is required for any reason, the initial sentence is a nullity; it ceases to exist." *Carter*, 208 Wis. 2d at 154. In resentencing "the court imposes a new sentence after the initial sentence has been held invalid." *Id.* at 147. At resentencing not only may a court consider a defendant's conduct after the imposition of the invalid sentence, *id.* at 146, but the court is not required to defer to the original sentencing objectives, *State v. Naydihor*, 2004 WI 43, ¶¶ 78–79, 270 Wis. 2d 585, 678 N.W.2d 220. In effect, the resentencing court is starting over. *See Carter*, 208 Wis. 2d at 157 ("The circuit court's role in determining an appropriate sentence is the same whether the pro-

ceeding is an initial sentencing or a resentencing."). Resentencing is limited only by the constitutional requirement that if a longer sentence is imposed at the second sentencing, a record must be made of the specific reasons for increased punishment in order to protect a successful defendant from vindictiveness by the court. *North Carolina v. Pearce*, 395 U.S. 711, 725–26 (1969), *overruled in part on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). Our supreme court has read the *Pearce* rule as "extending to information about events and circumstances either that the circuit court was unaware of at the initial sentencing or that occurred after the original sentencing." *Carter*, 208 Wis. 2d at 149 (citations omitted).

¶ 7. Counsel for Wood points out that published opinions have been somewhat imprecise in distinguishing between the requirements for, and effect of, sentence modification as opposed to resentencing. We acknowledge that language has, on occasion, been imprecise. For example, in *Carter*, an opinion dealing only with resentencing, the court held that a resentencing court could consider "all information . . . including information about events and circumstances either that the sentencing court was unaware of at the initial sentencing or that occurred after the initial sentencing." *Id.*, 208 Wis. 2d at 146. The reference to "information . . . that the sentencing court was unaware of at the initial sentencing" is frequently associated with sentence modification, and thus may have caused confusion in the context of other cases involving resentencing.

¶ 8. In *State v. Ramuta*, 2003 WI App 80, 261 Wis. 2d 784, 661 N.W.2d 483, we dealt with a motion for sentence modification based upon the allegation that the sentence was unduly harsh, and thus an erroneous

140

exercise of discretion, because the combined total of the sentences involved exceeded Ramuta's life expectancy due to his obesity. *Id.*, ¶ 3. We said that "if after sentencing it turns out that there was something that would have been important to the sentencing court but was either unknown or unknowingly overlooked, the court may *resentence* the defendant *to take the new matter into account.*" *Id.*, ¶ 8 (emphasis added). Reference to a "resentence" was perhaps ill-advised because it added to confusion in the context of the "new factor" tests which we applied and the sentence modification discussed in *Ramuta*.

¶ 9. Similarly, in *State v. Norton*, 2001 WI App 245, 248 Wis. 2d 162, 635 N.W.2d 656, we reversed and remanded "for resentencing" when we concluded that the trial court relied upon inaccurate information (a probation officer's representation that Norton's probation would *not* be revoked) coupled with later circumstances that extended Norton's sentence for nine months (when his probation *was* revoked). *Id.*, ¶ 1. We held that the misrepresentation constituted "a new factor." *Id.*, ¶¶ 1–4. We held that "the circumstances do constitute a *new factor* and *resentencing* is required because the *inaccurate information* relied on by the trial court *frustrates the purpose of the sentence.*" *Id.*, ¶ 13 (emphasis added). A new factor analysis and frustration of a purpose of the sentence are concepts related to modification of the sentence to correct specific problems, not to resentencing when it is necessary to completely re-do the invalid sentence. We inadvertently muddled the linguistic and legal waters with our mixing of distinctly different concepts.

¶ 10. We again mixed resentencing and sentence modification concepts in *State v. Delaney*, 2006 WI App 37, 289 Wis. 2d 714, 712 N.W.2d 368, when we held that

then-Governor Thompson's 1994 letter to the DOC was not a change in parole policy that "constituted a 'new factor' [thereby] entitling [Delaney] to *resentencing*." *Id.* ¶ 4 (emphasis added). Our analysis is actually of whether the letter is a "new factor," *see id.*, ¶¶ 7–21, which would be the basis only for sentence modification. We concluded that the trial court "correctly rejected Delaney's argument for sentence *modification* under the law of new factors." *Id.*, ¶ 21 (emphasis added). Our use of the word "resentencing" in the context of a new factor analysis relevant to sentence modification may have contributed to additional confusion.

¶ 11. We held in *Delaney* that the Thompson 1994 letter was not a "new factor" in part because: (1) there was no showing that the 1994 letter had any impact on Delaney's discretionary parole eligibility;[2] (2) the letter was not to the Parole Commission, but to the DOC Secretary who has no control over the Commission;[3]

---

[2] Delaney also fails to show what impact the Thompson letter might have had on his discretionary parole eligibility. The letter refers only to Wisconsin's mandatory release law, not parole eligibility. The law referred to in the letter was amended by 1993 Wis. Act 194, and changed the release date from *mandatory* to *presumptively mandatory* for an inmate serving a sentence for a serious felony committed on or after April 21, 1994.

*State v. Delaney*, 2006 WI App 37, ¶ 16, 289 Wis. 2d 714, 712 N.W.2d 368 (citation omitted; emphasis by *Delaney*).

[3] [T]he letter, although written by the governor, simply did not carry the force of law. To the contrary, the letter was addressed to the DOC secretary, who has no role in making parole decisions, instead of to the parole commission, the entity that does. The parole commission is attached to the DOC, but is not subject to the control of the DOC secretary.

*Delaney*, 289 Wis. 2d 714, ¶ 17 (citations omitted).

(3) the letter urged more aggressive conduct, but did not change existing law;[4] and (4) the letter did not mention parole, but referred only to mandatory release.[5] Thompson's 1994 letter to the DOC Secretary is not a "new factor" justifying sentence modification. *Delaney*, 289 Wis. 2d 714, ¶¶ 16–18.

¶ 12. Although unlike in *Delaney*, the trial court which sentenced Wood specifically considered when he

[4] [T]he Thompson letter did not purport to change the law. Instead, it was conditioned upon compliance with existing law, plainly directing the DOC to pursue "all available legal avenues . . . to keep violent offenders in prison as long as possible under the law." We agree with the State that the letter urged a more aggressive use of, but not a change in, existing law.

*Delaney*, 289 Wis. 2d 714, ¶ 18.

[5] The April 28, 1994 letter from then-Governor Tommy Thompson to DOC Secretary Michael Sullivan, states, in pertinent part:

Dear Secretary Sullivan:

I write to you today regarding the administration of Wisconsin's mandatory release law.

I recently proposed and subsequently signed into law a bill to end mandatory parole for violent offenders in Wisconsin. In enacting that important change, legal counsel advised that any retroactive change in the law would be unconstitutional.

. . . .

I believe that mandatory release of violent criminals is wrong . . . and that is why I moved to end mandatory parole for violent offenders this year.

In order to implement this policy as fully as possible, I hereby direct the Department of Corrections to pursue any and all available legal avenues to block the release of violent offenders who have reached their mandatory release date.

The policy of this Administration is to keep violent offenders in prison as long as possible under the law.

would "likely" be paroled, nothing in the court's sentencing explanation was a promise that he actually would be paroled at that date. Indeed, because an inmate's behavior in prison has an impact on actually being granted parole, the trial court could not have ordered his release at a specific time.

¶ 13. Here, the trial court concluded that Judge Brennan's reliance upon information from the DOC as to parole eligibility was "inaccurate" information in violation of Wood's constitutional rights to be sentenced on the basis of accurate information. We disagree, based upon the circumstances here and the decisions applying the new factor analysis.

¶ 14. The trial court properly concluded, as we previously held in *Delaney,* that the Thompson letter was not a "new factor." At that juncture, the motion for sentence modification should have been denied because Wood had not carried his burden to prove a new factor by clear and convincing evidence. *Franklin,* 148 Wis. 2d at 8–9 ("The . . . appropriate burden of proof under which a defendant must demonstrate the existence of a new factor . . . is that of clear and convincing evidence.").

¶ 15. The State argues that Wood agreed to the resentencing. Our review of the transcript of the motion hearing persuades us that such a conclusion is a tortured construction of the record. Wood, appearing at the hearing *pro se,* obviously did not understand the distinction the court was trying to explain between a "new factor" (which would entitle Wood to modification) and "inaccurate information" (which the trial court concluded was the fact here and which would result in

imposing a new sentence). Considering the language confusion we have just discussed, Wood's confusion is not surprising. The court, over many pages of transcript, attempted several times to explain to Wood why the court concluded that the facts did not support sentence modification, but instead supported resentencing. Wood continued to explain that he wanted sentence modification, not a resentencing.[6] At the conclusion of the last explanation by the court, the following colloquy occurred:

> THE COURT: All right. Do you understand what – where we're at in going forward? I need a "yes" or "no."
>
> WOOD: Oh, yes, I understand.
>
> THE COURT: I can see your head nod. The Court Reporter can't get that. All right.

---

[6] The following statements were made by Wood during the hearing on his motion for modification of sentence:

> I'm asking for a modification, not a resentencing. [Correcting the identification of the proceedings at the beginning of the hearing.]
>
> . . . .
>
> I didn't even come here for a resentencing. The whole thing was based on the fact that this was a new factor for a modification hearing.
>
> . . . .
>
> I don't understand none of this proceeding now. I came here for a modification hearing. Now I'm told I got to be resentenced all over again.
>
> . . . .
>
> My motion was for a modification to modify sentence.
>
> . . . .
>
> I didn't send in a motion to – to be resentenced.

Now the court will grant the motion then to vacate the sentence and we'll proceed to sentencing.

¶ 16. It is on this colloquy, after Wood repeatedly told the court that he had asked for, and wanted, a sentence modification and not a resentencing, that the State bases its assertion that Wood agreed to the resentencing. Even after the trial court announced it would proceed to sentencing, Wood repeated his insistence that his only objective was modification of sentence in the following exchange about the sentencing with the court:

> THE COURT: Do you want to be represented by the Public Defender's office if they will?
>
> WOOD: I really don't know, your Honor. I'm not a lawyer, so I really don't know nothing about this. *All I know is I was trying to come back for a modification of sentence. Everything is turned around when I got here now.*

(Emphasis added.)

¶ 17. Once the trial court found that grounds for sentence modification did not exist, particularly with an unrepresented defendant,[7] the trial court should not have converted a motion for sentence modification to a motion for resentencing in the absence of a clear, unequivocal and knowing stipulation by the defendant. Accordingly, we reverse and remand with instructions to vacate the sentence now in effect, to deny the motion

---

[7] When judging the sufficiency of pleadings by *pro se* prisoners, we apply a liberal policy of review. *See State ex rel. Mentek v. Schwarz*, 2001 WI 32, ¶ 17, 242 Wis. 2d 94, 624 N.W.2d 150. We see no reason to apply a harsher standard in review of a hearing record involving a *pro se* prisoner.

146

to modify the sentence and to reinstate the sentence originally imposed with credit for all time served from the date the original sentence was vacated.

*By the Court.*—Order reversed and cause remanded with directions.