COURT OF APPEALS
DECISION
DATED AND FILED

February 6, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP308-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2015CF256

**IN COURT OF APPEALS**
**DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JARED L. SPENCER,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and orders of the circuit court for Dodge County: JOSEPH G. SCIASCIA, Judge. *Affirmed*.

Before Kloppenburg, Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1  PER CURIAM.  Jared Spencer appeals a judgment of conviction and circuit court orders that denied Spencer's motion for sentence modification or resentencing and his motion for reconsideration.  Spencer contends that he is entitled to sentence modification based on a new factor: evidence that Spencer attempted to take his psychiatric medications as prescribed when he was in jail.  Alternatively, he argues that he is entitled to resentencing because the court relied on inaccurate information that Spencer refused his psychiatric medications in jail.  We conclude first that the court properly exercised its discretion when it denied Spencer's motion for sentence modification.  We then conclude that Spencer is not entitled to resentencing because any error by the court in relying on inaccurate information was harmless.  We affirm.

¶2  Spencer was convicted of attempted first-degree intentional homicide based on a shooting incident at a Fleet Farm in Beaver Dam.  In the circuit court's sentencing remarks, the court noted Spencer's mental health needs and that Spencer had acknowledged that he stopped taking his prescribed psychiatric medications a few weeks prior to the shooting.  The court repeatedly referenced reports that Spencer had refused his medications even in jail after his arrest.  The court stated that, while in jail, "he refused his meds"; that "one would think when you are in jail for having shot somebody and you realize that you quit taking your meds three weeks ago, that this would be a good time to just do what you are told for once"; that, "[b]y refusing his meds, he sent a signal to the staff that he does what he wants when he wants. If he doesn't want to take his meds, he is not going to take his meds"; that the court was "sitting here trying to decide what do we do with [Spencer] now, and [found] in the report that when he was in jail after he had been arrested and was offered and prompted to take his meds, he refused to take them"; that, in considering probation and whether Spencer would

be compliant with his medications in the community, "[i]f it hadn't been for the incident in jail, I'd say maybe, but that is a big—to me that is a very important fact here. You can't do it when the jailer prompts you to do it, it's not going to happen"; and, when listing the facts the court considered most pertinent to its sentencing determination, the court included that "he refused to take the meds even when prompted to do so in jail." The court sentenced Spencer to fifteen years of initial confinement and twenty years of extended supervision.

¶3 Spencer moved for sentence modification or, alternatively, for resentencing. Both claims were premised on the circuit court's repeated statements as to Spencer's refusal to take his medications while in jail. Spencer argued that, contrary to the court's statements, the jail had marked Spencer as "refusing" his medications when, in fact, Spencer was asking to receive his medications in the manner prescribed. Spencer argued that evidence that Spencer attempted to take his psychiatric medications as prescribed in the jail was a new factor justifying sentence modification. In the alternative, he argued that the court's reliance on inaccurate information entitled him to resentencing. The court denied relief. It explained that it would have imposed the same sentence without the inaccurate information as to Spencer's refusal to take his medications in jail. Spencer appeals.

*I. Sentence Modification*

¶4 "Deciding a motion for sentence modification based on a new factor is a two-step inquiry." ***State v. Harbor***, 2011 WI 28, ¶36, 333 Wis. 2d 53, 797 N.W.2d 828. First, "[t]he defendant has the burden to demonstrate by clear and convincing evidence the existence of a new factor." ***Id.*** A new factor is "a fact or set of facts highly relevant to the imposition of sentence, but not known to the

[sentencing court], either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties." *Id.*, ¶40 (quoted source omitted). "Whether the fact or set of facts put forth by the defendant constitutes a 'new factor' is a question of law." *Id.*, ¶36.

¶5    However, "[t]he existence of a new factor does not automatically entitle the defendant to sentence modification." *Id.*, ¶37. Instead, once the defendant establishes a new factor, "the circuit court determines whether that new factor justifies modification of the sentence." *Id.* "In making that determination, the circuit court exercises its discretion." *Id.* "A discretionary sentencing decision will be sustained if it is based upon the facts in the record and relies on the appropriate and applicable law." *State v. Travis*, 2013 WI 38, ¶16, 347 Wis. 2d 142, 832 N.W.2d 491.

¶6    Spencer argues that the fact that he attempted to take his medications as prescribed while in jail is a new factor that warrants sentence modification because it frustrated the purpose of the sentencing. *See Harbor*, 333 Wis. 2d 53, ¶49 ("Any fact that frustrates the purpose of the original sentence would generally be a new fact that is highly relevant to the imposition of sentence." (internal citation omitted)). He argues that the facts in this case are akin to those in *State v.*

*Norton*, 2001 WI App 245, 248 Wis. 2d 162, 635 N.W.2d 656.[1]  In *Norton*, at sentencing, Norton's probation agent informed the court that Norton's probation in a separate matter would not be revoked based on the current offense.  *Id.*, ¶4.  The court sentenced Norton to incarceration for the period of time the court deemed necessary for Norton to obtain drug and alcohol treatment, imposed consecutively to any other sentence.  *Id.*, ¶¶4-5, 15.  However, Norton's probation in the separate matter was subsequently revoked, and his previously imposed and stayed sentence was then imposed consecutively to his sentence in the instant case.  *Id.*, ¶5.

¶7      The *Norton* court concluded that the circumstances constituted a new factor and that the new factor warranted sentence modification "because the inaccurate information relied on by the [circuit] court frustrate[d] the purpose of the sentence."[2]  *Id.*, ¶13.  It determined that whether Norton's probation would be

---

[1] We note that the State fails to address Spencer's argument that the facts here are comparable to the facts in *State v. Norton*, 2001 WI App 245, 248 Wis. 2d 162, 635 N.W.2d 656. When, as here, an appellant relies heavily on a particular case to support an argument, it is helpful to this court for the respondent to address that case in its respondent's brief.  Moreover, if a respondent fails to address a key argument by an appellant, that argument may be deemed conceded.  *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) ("Respondents on appeal cannot complain if propositions of appellants are taken as confessed which they do not undertake to refute." (quoted source omitted)).  However, even if we deem this argument conceded by the State, we are not bound by that concession.  *See State v. Harbor*, 2011 WI 28, ¶37, 333 Wis. 2d 53, 797 N.W.2d 828 (circuit court's determination of whether alleged new factor warrants sentence modification is reviewed for proper exercise of discretion); *Luciani v. Montemurro-Luciani*, 199 Wis. 2d 280, 294, 544 N.W.2d 561 (1996) (whether a circuit court properly exercised its discretion is a question of law); *Ferdon ex rel. Petrucelli v. Wisconsin Patients Comp. Fund*, 2005 WI 125, ¶50, 284 Wis. 2d 573, 701 N.W.2d 440 (overruled on other grounds by *Mayo v. Wisconsin Injured Patients & Families Comp. Fund*, 2018 WI 78, 383 Wis. 2d 1, 914 N.W.2d 1) (we are not bound by a party's concession of law).

[2] As Spencer notes, the *Norton* court was imprecise in its discussion of sentence modification versus resentencing.  *See State v. Wood*, 2007 WI App 190, ¶9, 305 Wis. 2d 133, 738 N.W.2d 81 (explaining that *Norton* "inadvertently muddled the linguistic and legal waters with our mixing of distinctly different concepts," and clarifying that "[a] new factor analysis ... [is a] concept[ ] related to modification of the sentence to correct specific problems, not to resentencing when it is necessary to completely re-do the invalid sentence").

5

revoked "was highly relevant to sentencing," noting that the sentencing court had "focused on imposing a sufficiently long sentence to permit Norton to 'dry out' and become 'drug free.'" *Id.* However, the court noted, the sentencing court had been inaccurately informed that Norton's probation was not going to be revoked as a result of the instant case, and the court therefore believed Norton would not have to serve that sentence. *Id.*, ¶¶13-14. Thus, the new facts as to Norton's probation revocation established that the sentence was based on inaccurate information that was directly linked to the purpose of the sentence. *Id.*, ¶¶13-16.

¶8 Spencer argues that here, as in ***Norton***, the circuit court was presented with inaccurate information that frustrated the purpose of the sentence. He argues that the court mistakenly believed that Spencer had refused his medications in jail and that he therefore posed a significant danger to the public. Spencer contends that the court made clear in its sentencing remarks that its belief that Spencer had refused to take his medications while in jail was directly linked to the purpose of the sentence. Thus, he contends, the new information that Spencer was actually making efforts to receive his medications according to their prescribed manner while he was in jail frustrated the court's purpose of imposing the sentence necessary to protect the public.

¶9 The State responds that, even if Spencer established a new factor, the circuit court properly exercised its discretion by determining that sentence modification was not warranted. It contends that the court explained in its orders denying postconviction relief that the sentence was based on other, more important sentencing factors. In reply, Spencer argues that the court's statements that it would have imposed the same sentence with the new information were contrary to its sentencing remarks. Spencer argues that, contrary to the court's postconviction statements, it is clear from the sentencing transcript that one of the main purposes

6

of the sentence was to protect the public from Spencer's conduct when he fails to take his medications. He argues that sentence modification based on the new information as to Spencer's attempts to comply with his medications while in jail is warranted to achieve the court's stated sentencing objective.

¶10 As we explain, we conclude that the circuit court properly exercised its discretion by determining that the alleged new factor did not warrant sentence modification. Accordingly, we need not determine whether the facts alleged by Spencer constitute a new factor. *See Harbor*, 333 Wis. 2d 53, ¶38 ("[I]f the court determines that in the exercise of its discretion, the alleged new factor would not justify sentence modification, the court need not determine whether the facts asserted by the defendant constitute a new factor as a matter of law.").

¶11 At sentencing, the circuit court considered the connection between Spencer's history of noncompliance with his prescribed psychiatric medications and his criminal conduct. The court noted evidence that Spencer was compliant with his medications while an inpatient at Mendota Mental Health, which resulted in a "noticeable improvement." The court noted Spencer's past history of noncompliance with his medications, including his decision to stop taking his medications for several weeks leading up to the shooting. The court explained that Spencer posed a risk to the public based on his mental health and substance abuse issues, and that it was "imperative that he continue to receive mental health treatment both in and out of custody." The court explained that it had to weigh Spencer's ability to remain compliant with his medications against public safety, and that Spencer did not have a good record of remaining compliant. The court made numerous references to reports that Spencer was not compliant with his medications while in jail, opining that if Spencer was unable to remain compliant even while in jail, he was not going to be compliant. The court considered

whether confinement was necessary, and opined that a "very important fact" in that consideration was Spencer's refusal of his medications in jail.

¶12     The circuit court explained that the facts that were most pertinent to its sentencing were Spencer's history of mental illness and failure to consistently take his medications, including his failure to take his medications while in jail; his "persistent pattern of destructive and aggressive behavior"; and the seriousness of the offense, which "resulted in [serious] bodily injury to the person shot" and "serious long-term … pain, suffering, disability and psychological damage to [the victims], the families, everybody who saw it and … harmed everybody that was in the neighborhood."  The court relied on those facts to find that "Spencer's inability to control his actions constitutes a substantial risk to the safety of himself and the public."  The court explained that Spencer's act of drawing a gun created a danger to a large number of people and to Spencer himself.  It also found that "[t]here is no reason at this time to believe that any level of supervision will ensure the safety of the public," because "Spencer cannot be trusted to take his meds as prescribed…. The facts don't support the argument that he can take his meds as prescribed without being in custody.  He doesn't always take them when he is in custody."   The court determined that confinement was necessary based on Spencer's character and rehabilitative needs, because attempts to control his behavior had been unsuccessful in the community; based on the seriousness of the offense, which only by luck was not a homicide; and to protect the public from Spencer's demonstrated pattern of destructive behavior. *See State v. Ziegler*, 2006 WI App 49, ¶23, 289 Wis. 2d 594, 712 N.W.2d 76 ("The primary sentencing factors which a court must consider are the gravity of the offense, the character of the defendant, and the need to protect the public.").  Thus, the court explained that it considered Spencer's history of noncompliance with his medications and his

destructive behavior, as well as the very serious nature of the shooting, along with its belief that Spencer had failed to comply with his medications in jail, in determining the sentence to impose.

¶13 In its postconviction decision, the circuit court found that sentence modification was not warranted because whether or not Spencer refused his medications in jail was not determinative of the court's sentence. It explained that at sentencing it had considered the seriousness of the offense, the need to protect the public, and Spencer's character and rehabilitative needs. The court explained that it had considered Spencer's "long history of disruptive behavior, his mental health issues, and his long standing failure to consistently take his medications." The court determined that those facts supported its sentencing decision, irrespective of information regarding Spencer's noncompliance with his medications in jail.

¶14 The circuit court acknowledged that evidence that Spencer was noncompliant with his medications while in jail had made an impression on the court, but also explained that "[t]he taking or not taking of meds while in jail was only the most recent chapter in his long standing inability to consistently take his meds." The court clarified further that, assuming that the information was inaccurate, "that fact does not in any way change the historical fact which still remains uncontroverted: his track record for consistently taking his meds is very poor." The court pointed out that Spencer had acknowledged that he had stopped taking his medications prior to the shooting, and stated that "[t]he fact that his overall track record of consistently taking his meds is very poor is overwhelmingly supported in the record. It was the fact that he does not always consistently take his meds which was important to the Court at sentencing." Thus, the court sufficiently explained its determination that sentence modification was not

warranted, and we are not persuaded by Spencer's argument that *Norton* compels a different result. We discern no erroneous exercise of the court's discretion in its determination that the alleged new factor of Spencer's attempts to comply with his medications while in jail did not warrant sentence modification.

## II. Resentencing

¶15    "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. Whether the defendant was denied that right is a constitutional question that we review de novo. *Id.* "A defendant who requests resentencing due to the circuit court's use of inaccurate information at the sentencing hearing must show both that the information was inaccurate and that the court actually relied on the inaccurate information in the sentencing." *Id.*, ¶26 (quoted source omitted). If the defendant establishes actual reliance on inaccurate information, the burden shifts to the State to prove that the error was harmless. *Id.*

¶16    Spencer argues that the jail complaints and other supporting material he submitted with his postconviction motion establish that the information that Spencer had refused his medications in jail was inaccurate. He contends that the sentencing transcript establishes that the circuit court actually relied on its mistaken belief that Spencer had refused his medications in jail in determining the sentence to impose. Spencer argues that the State cannot show that the court's reliance on the inaccurate information that Spencer refused his medications in jail was harmless because, Spencer contends, that information was "obviously central" to the court's sentencing determination. He contends that the court considered Spencer's failure to comply with his medications while in jail as "dispositive of the question whether Spencer should or should not be placed on probation." He

10

contends that the sentencing transcript makes clear that, but for the court's mistaken belief that Spencer refused his medications in jail, the court would have imposed a very different sentence. He argues that the court's after-the-fact assertions that it would have imposed the same sentence without the inaccurate information are contrary to the sentencing transcript and should be disregarded. *See State v. Travis*, 2013 WI 38, ¶48, 347 Wis. 2d 142, 832 N.W.2d 491 ("A reviewing court must independently review the record of the sentencing hearing to determine the existence of any actual reliance on inaccurate information. A circuit court's after-the-fact assertion of non-reliance on allegedly inaccurate information is not dispositive of the issue of actual reliance.").

¶17 The State responds that Spencer forfeited his claim of inaccurate information by failing to adequately object at the sentencing hearing. *See State v. Coffee*, 2020 WI 1, ¶19, ___ Wis. 2d ___, ___ N.W.2d ___ (in some situations, "a defendant may forfeit a right if the defendant fails to object at the time the right is violated"); *see also id.*, ¶¶ 26-35. The State also contends that Spencer failed to establish that the information that he refused his medications in jail was inaccurate or that the circuit court actually relied on that information in determining Spencer's sentence. Finally, the State argues that, if the information was inaccurate and the court did actually rely on it, the error was harmless because, it asserts, the sentence would have been the same absent the error. *See Travis*, 347 Wis. 2d 142, ¶73 ("The State can meet its burden to prove harmless error by demonstrating that the sentencing court would have imposed the same sentence absent the error."). The State argues that the focus of the court's sentencing was Spencer's inability to conform his behavior in the community when he was noncompliant with his medications, including his behavior as to the attempted murder in this case. It cites the court's explanation in its postconviction orders

that its sentencing decision would have been the same absent the inaccurate information.

¶18    In reply, Spencer argues that forfeiture does not apply in this scenario.  He argues that the State failed to develop an argument that the sentencing court did not actually rely on inaccurate information.  He also argues that the State has not met its burden to show harmless error, contending that the State failed to show that there is no reasonable probability that, but for the circuit court's reliance on the information as to Spencer's noncompliance with his medications in jail, the sentence would have been different.  *See* ***State v. Anderson***, 222 Wis. 2d 403, 411, 588 N.W.2d 75 (Ct. App. 1998) ("[A]n error is harmless if there is no reasonable probability that the error contributed to the outcome.").  He reiterates that the court's postconviction statements are not dispositive, and argues that the court expressly tied its belief as to Spencer's noncompliance in the jail to its sentencing rationale.  He argues that the State is impermissibly speculating that the court's sentencing would have been the same absent the error, contending that such speculation has been rejected by the courts in ***United States v. Tucker***, 404 U.S. 443, 446-49 & n.8 (1972) (court would not "assume, now that the constitutional invalidity of the respondent's previous convictions [relied upon by the sentencing court] is clear," that the court would impose the same sentence upon resentencing); ***Travis***, 347 Wis. 2d 142, ¶73 (improper for State to rely on "speculation about what a circuit court would do in the future upon resentencing" to meet its burden to show sentencing error was harmless); ***U.S. ex rel. Welch v. Lane***, 738 F.2d 863, 868 (7th Cir. 1984) ("Once it is established that the [circuit] court relied on erroneous information in passing sentence, reviewing courts cannot speculate as to whether the same result would again ensue with the error corrected.").

12

¶19     Assuming that Spencer has established that the circuit court actually relied on inaccurate information as to his refusal to take his medications while in jail, we conclude that the State has met its burden to establish that the error was harmless.  Because we reject Spencer's claim on this basis, we do not address whether forfeiture applies or whether the court actually relied on inaccurate information.  *See Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 (stating that appellate courts "should decide cases on the narrowest possible grounds," and that "[i]ssues that are not dispositive need not be addressed").

¶20     Our harmless error analysis centers, as it must, on the sentencing transcript.  *See Travis*, 347 Wis. 2d 142, ¶73 (our review of whether sentencing error is harmless is a question of whether "the sentencing court would have imposed the same sentence absent the error," focusing "on the transcript of the sentencing proceeding" rather than "the circuit court's assertions during … postconviction [proceedings] … or speculation about what a circuit court would do in the future upon resentencing").  We conclude that, considering the circuit court's sentencing remarks in their entirety, there is no reasonable probability that the court's reliance on inaccurate information that Spencer refused his medications while in jail contributed to the sentence it imposed.  *See State v. Payette*, 2008 WI App 106, ¶46, 313 Wis. 2d 39, 756 N.W.2d 423 ("An error is harmless if there is no reasonable probability that it contributed to the outcome." (quoted source omitted)).

¶21     As set forth above, the circuit court considered evidence that Spencer had refused his medications while in jail along with evidence as to Spencer's history of noncompliance with his medications while in the community.  The court determined that confinement was necessary because Spencer had a long

history of noncompliance with his medications and of corresponding behavioral issues. While the court found significant to its analysis that Spencer had refused his medications while in jail, it also relied on Spencer's history of noncompliance in the community in determining that confinement was necessary. Significantly, the court relied on evidence that Spencer had decided to stop taking his medications for several weeks prior to the shooting. Thus, the court's reliance on the underlying fact of Spencer's historical failure to comply with his medications and his resulting dangerous behavior remains undisturbed absent the court's reliance on Spencer's failure to take his medications while in jail. We therefore conclude that the State has met its burden to establish that the sentence would have been the same absent the inaccurate information.

¶22 We recognize the circuit court's sentencing remarks cited by Spencer that, if read in isolation, could suggest that the court found Spencer's noncompliance in the jail central to its determination that confinement was necessary. For example, the court indicated that "[i]f it hadn't been for the incident in the jail, I'd say maybe [probation would be appropriate], but that is a big—to me that is a very important fact here." However, as explained above, the court also relied on Spencer's historical failure to comply with his medications when not in custody, most significantly immediately prior to the shooting. Thus, even though the court suggested that "maybe" probation would be appropriate absent Spencer's noncompliance with his medications in jail, it also clarified that it found that confinement was necessary based on Spencer's history of noncompliance with medications when not in custody. Moreover, the court cited other facts as important to its sentencing determination, including the necessity of confinement: the severity of the offense, which only by luck did not result in death and which had serious consequences for the victims; and Spencer's "persistent

14

pattern of destructive and aggressive behavior." Because the court thoroughly explained the rationale for its sentence independent from its reliance on the inaccurate information that Spencer refused his medications in jail, there is no reasonable probability that the sentence would have been different absent the error. Accordingly, the error was harmless.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).