COURT OF APPEALS
DECISION
DATED AND FILED

April 29, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2200-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2000CF3925

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

XAVIER N. LOVE,

DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: JEAN M. KIES, Judge. *Affirmed*.

Before Donald, P.J., Geenen, and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Xavier N. Love appeals an order denying his motion for sentence modification. Love contends that the circuit court relied on inaccurate information at his sentencing in 2001—a 1989 psychological evaluation which included his I.Q.—and that a re-evaluation of his I.Q. conducted in 2006 while he was in prison is a new factor warranting sentence modification.[1] We disagree, and therefore affirm.

## BACKGROUND

¶2 In 2000, Love pled guilty to first-degree reckless homicide, as a party to a crime. Love and his friend, Shantwan Jennings, were involved in a shoot-out with several men they believed had previously robbed Jennings at gunpoint. One of those men died during the shoot-out, as did Jennings.

¶3 Love was sentenced in January 2001 to thirty years of initial confinement and fifteen years of extended supervision. At the sentencing hearing, the circuit court referenced a psychological evaluation of Love that had been completed in 1989, when Love was thirteen years old, which was attached to the pre-sentence investigation report. The evaluation indicated that Love's I.Q. was 74, which the court noted was "near the mild or mental retardation range," according to the evaluation.

---

[1] Love was sentenced by the Honorable John J. DiMotto. Love's current motion for sentence modification was decided by the Honorable Jean M. Kies, while previous postconviction motions were decided by several other judges. We refer to them all generally as the circuit court.

¶4     In September 2023, through counsel, Love filed the motion for sentence modification underlying this appeal.[2]  In that motion, he asserted that his I.Q. was re-evaluated in 2006, while in prison, and found to be 59—lower than the 1989 evaluation.  He thus argued that the 2006 evaluation is a new factor warranting sentence modification, and that the circuit court relied on inaccurate information at sentencing in considering the 1989 evaluation, because his "cognitive deficits had deteriorated significantly" since that earlier evaluation had been done.[3]

¶5     The circuit court rejected Love's new factor argument.  The court observed that the 2006 evaluation was a form relating to testing accommodations for Love to take a GED examination, and found that it did not "provide the court

---

[2] We note that Love previously filed a *pro se* motion for sentence modification in May 2003 relating to the circuit court's exercise of discretion at sentencing regarding his cognitive limitations, which the circuit court rejected as untimely.  He subsequently filed a motion pursuant to WIS. STAT. § 974.06 (2003-04) in August 2003, alleging ineffective assistance of trial counsel for failing to object or bring a motion relating to the circuit court's exercise of discretion on this issue; that claim was rejected by the circuit court and affirmed by this court.  *See State v. Love*, No. 2003AP3127, unpublished slip op., ¶1 (WI App Dec. 20, 2005).

Additionally, in 2006 Love filed in this court a *pro se* petition for writ of habeas corpus pursuant to *State v. Knight*, 168 Wis. 2d 509, 484 N.W.2d 540 (1992), alleging that his appellate counsel was ineffective for failing to commence an appeal.  That petition was denied after an evidentiary hearing, where it was determined that Love's appellate counsel had reviewed the no-merit procedure with him after finding no issues of arguable merit, and that Love had declined to pursue the option of a no-merit appeal.  *See State ex rel. Love v. Endicott*, No. 2006AP212-W, unpublished op. and order at 2-3 (WI App May 1, 2006).

[3] Love claims he was unaware of the results of the 2006 evaluation until 2016.  He filed a second *pro se* petition for writ of habeas corpus pursuant to *Knight* in 2016 where he raised several claims, including one relating to the 2006 evaluation.  He asserted that the evaluation "'constitut[ed] newly discovered evidence' that may affect the validity of his plea and sentence." *See State ex rel. Love v. Strahota*, No. 2016AP1404-W, unpublished op. and order at 4 (WI App July 3, 2017).  We rejected that claim because it did not assert ineffective assistance by appellate counsel, and therefore was not properly before this court in a *Knight* petition.  *Strahota*, No. 2016AP1404-W at 4.

with any significant information about the defendant's cognitive abilities." The court therefore found that Love had not established that the 2006 evaluation was a new factor, and denied Love's motion for sentence modification. This appeal follows.

## DISCUSSION

¶6 On appeal, Love renews his argument that the 2006 evaluation of his I.Q. done in prison is a new factor warranting sentence modification. He asserts that this evaluation demonstrates that his cognitive delays had significantly deteriorated by the time of sentencing, when compared to his I.Q. as stated on the 1989 evaluation. He therefore contends that the circuit court relied on inaccurate information—the 1989 evaluation of his I.Q.—at the time of sentencing.

¶7 A new factor is "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because ... it was unknowingly overlooked by all of the parties." *State v. Harbor*, 2011 WI 28, ¶40, 333 Wis. 2d 53, 797 N.W.2d 828 (citation omitted). The defendant bears the burden of demonstrating, by clear and convincing evidence, the existence of a new factor. *Id.*, ¶36. Whether a fact or set of facts constitutes a new factor is a question of law that this court considers *de novo*. *Id.*, ¶33.

¶8 For his new factor argument, Love suggests that the 2006 evaluation is proof that his cognitive abilities had declined by the time of sentencing because he never received the treatment proposed in the 1989 evaluation. However, the test used to calculate Love's I.Q. in 2006 was different than the test used in 1989. Furthermore, the 2006 evaluation was performed while Love was in prison, and as the circuit court pointed out in its decision, there could be a "myriad" of reasons

4

for the lower I.Q. score, such as prison environmental conditions, medication he may have been taking at that time, or anxiety relating to the GED examination he was about to take.

¶9    In short, it is pure speculation that the 2006 evaluation demonstrates that the 1989 evaluation used at sentencing was inaccurate.  We therefore conclude that Love has not established, by clear and convincing evidence, that the 2006 evaluation is a new factor.  *See id.*, ¶36.

¶10    Furthermore, Love's I.Q. was not highly relevant to his sentence.  *See id.*, ¶40.  The circuit court made a reference to Love's I.Q. at sentencing, observing that his "cognitive disability" and "limitations" were "affected by [Love's] upbringing" as an abused and neglected child, calling him a "product of [his] environment."  However, the court stated that this was "not an excuse," and that Love was "still responsible for the consequences of [his] behavior."  In fact, the court pointed out that even with his cognitive limitations, Love knew "right from wrong."

¶11    Moreover, the circuit court focused on Love's prior record at sentencing.  It cited numerous juvenile and adult offenses where Love was given probation, observing that Love had been given "many opportunities … time and time again to get on the straight and narrow path of doing good things, and yet [he] didn't take advantage of those opportunities."  The court then stated that "above and beyond [Love's] rehabilitation and the protection of society," he must be "punished for what [he] did, for [his] role in the commission of this crime."

¶12    In other words, while the circuit court acknowledged Love's cognitive issues, it determined they did not play a significant role in the offense he committed.  Instead, the court focused on Love's lack of rehabilitation from

5

previous convictions and the need for punishment when it imposed Love's sentence. Therefore, Love has not demonstrated that his I.Q., as set forth in the 1989 evaluation, was a highly relevant factor in his sentencing. As a result, the 2006 evaluation does not meet the definition of a new factor. *See id.*

¶13 We note that while Love states that he is seeking sentence modification, he argues that the circuit court relied on inaccurate information when it imposed his sentence. This is the standard for resentencing, *see State v. Tiepelman*, 2006 WI 66, ¶31, 291 Wis. 2d 179, 717 N.W.2d 1, which is a separate standard from the *Harbor* test for determining whether sentence modification is warranted. *State v. Wood*, 2007 WI App 190, ¶9, 305 Wis. 2d 133, 738 N.W.2d 81 (explaining that resentencing and sentence modification are "distinctly different concepts").

¶14 Nevertheless, an argument for resentencing fails for similar reasons. In the first place, Love has not shown that the 1989 evaluation—although somewhat dated at the time of sentencing—was not accurate. As we previously observed, Love's presumption that the 2006 evaluation provides a more accurate indication of Love's I.Q. at the time of his sentencing than the 1989 evaluation is based on nothing more than speculation.

¶15 Furthermore, as discussed above, Love has not shown that the circuit court actually relied on the I.Q. set forth in the 1989 evaluation. Although the court recognized Love's cognitive limitations, it did not find them to be particularly compelling, instead focusing on Love's failed opportunities for rehabilitation and his need for punishment. Therefore, Love has not met the standard for resentencing. *See Tiepelman*, 291 Wis. 2d 179, ¶31.

**CONCLUSION**

¶16    For the reasons set forth above, we conclude that Love has not established the existence of a new factor relating to his cognitive disability, nor has he demonstrated that the circuit court relied on inaccurate information at sentencing regarding this issue. Accordingly, we affirm the circuit court's order denying his motion for sentence modification.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.