COURT OF APPEALS
DECISION
DATED AND FILED

August 29, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2020-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2012CF186

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

KODI L. BEAR,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Forest County: JAMES R. HABECK and KATHERINE SLOMA, Judges. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Kodi Bear appeals a judgment, entered upon his guilty plea, convicting him of second-degree sexual assault of a child under the age of sixteen. He also appeals an order denying his motion for postconviction relief. Bear contends that the circuit court erred by denying his postconviction motion for sentence modification based on the existence of three new factors.[1] For the reasons discussed below, we affirm the judgment and order.

## BACKGROUND

¶2 Bear was charged with first-degree sexual assault of a child under the age of sixteen (use or threat of force or violence and as an actor over the age of eighteen) (Count 1) and incest (Count 2). The charges stemmed from allegations that then-nineteen- or twenty-year-old Bear sexually assaulted his then-fourteen-year-old female relative on several occasions. As a result of one of the assaults, the victim became pregnant and later gave birth.

¶3 Ultimately, Bear entered into a plea agreement with the State that was approved by the sentencing court. Pursuant to the agreement, the court granted the State's motion to amend Count 1 to a charge of second-degree sexual assault of a child under the age of sixteen, and dismissed and read in Count 2. The court then accepted Bear's guilty plea to Count 1 as amended.

¶4 At a later hearing, the State asked the sentencing court to sentence Bear to a twenty-five-year sentence consisting of ten years' initial confinement followed by fifteen years' extended supervision. The State informed the court

---

[1] The Honorable James R. Habeck presided over Bear's sentencing, and the Honorable Katherine Sloma presided over Bear's postconviction proceedings. We will hereinafter refer to Judge Habeck as the "sentencing court" and Judge Sloma as the "circuit court."

2

that: "As part of the resolution of this [case], we did amend things to avoid a mandatory minimum requirement of a [twenty-five-]year sentence." The State also requested that the court require Bear to register as a sex offender "consistent with the statute." In turn, the defense requested an imposed and stayed prison sentence with orders for fifteen years of probation and fifteen years of sex offender registration.

¶5 The sentencing court adopted the State's recommendation regarding incarceration and extended supervision and it sentenced Bear accordingly. In sentencing Bear, the court stated that it possessed "a factual studies file in [its] office" that stated females "younger than 15 that engage in sex:" (1) "have about triple the suicide and depression rates"; (2) "aren't well built physically for becoming a parent"; (3) "often have drops in school performance"; and (4) have "increased cancer rates." Later in the sentencing, the court also noted the "absolutely heinous type of act involving a vulnerable teenager." The court initially adopted the defense's recommendation that Bear be required to register as a sex offender for fifteen years, but subsequently amended the judgment of conviction after it learned that Bear was required to register as a sex offender for life pursuant to WIS. STAT. § 301.45(5)(b)1m. (2021-22).[2]

¶6 Bear filed a postconviction motion and argued that his sentence should be modified based upon three new factors: (1) the State's incorrect statement at the beginning of the sentencing hearing that Bear was originally charged with a crime that carried a twenty-five-year mandatory minimum; (2) the

---

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

incorrect belief by Bear's trial counsel and the sentencing court that Bear could register as a sex offender for fifteen years when, in reality, he was required by law to register as a sex offender for life; and (3) the sentencing court's reliance on unverified "factual studies" when imposing Bear's sentence.

¶7      The circuit court denied Bear's postconviction motion. Bear appeals and he again argues that the same three new factors warrant sentence modification. Additional facts will be provided below as necessary.

## DISCUSSION

¶8      Wisconsin circuit courts have inherent authority to modify criminal sentences based upon a defendant's showing of a "new factor." *State v. Harbor*, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828 (citation omitted). "Deciding a motion for sentence modification based on a new factor is a two-step inquiry." *Id.*, ¶36. The defendant must first demonstrate by clear and convincing evidence the existence of a new factor. *Id.* A new factor is

> a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties.

*Id.*, ¶40 (citation omitted). If the defendant meets his or her burden of demonstrating that a new factor is present, "the circuit court determines whether that new factor justifies modification of the sentence." *Id.*, ¶37.

¶9      "Whether the fact or set of facts put forth by the defendant constitutes a 'new factor' is a question of law." *Id.*, ¶36 (citation omitted). "Accordingly, if [the circuit] court determines that the facts do not constitute a new factor as a matter of law, 'it need go no further in its analysis' to decide the

4

defendant's motion." *Id.*, ¶38 (citation omitted). We review questions of law independently. *Id.*, ¶33. Conversely, whether a new factor justifies modification of a sentence is a matter left to a circuit court's discretion and is reviewed under the erroneous exercise of discretion standard. *Id.*, ¶¶33, 37.

## I. Mandatory Minimum

¶10 Bear first contends that the State's comment at his sentencing hearing regarding a twenty-five-year mandatory minimum sentence constitutes a new factor. Specifically, during its sentencing argument, the State commented: "As part of the resolution of this [case], we did amend things to avoid a mandatory minimum requirement of a [twenty-five-]year sentence."[3] It is undisputed that this statement was incorrect because, as charged in the criminal complaint, Count 1 carried a mandatory minimum of five years' initial confinement and Count 2 did not carry a mandatory minimum. *See* WIS. STAT. §§ 939.616(2), 944.06. The State nonetheless argues, as it did in the circuit court, that the incorrect information regarding the mandatory minimum does not constitute a new factor.

¶11 The circuit court concluded that the incorrect statement regarding a twenty-five-year mandatory minimum did not constitute a new factor because it "wasn't really a concern for" the sentencing court in reaching a sentencing decision. The court also noted that at the plea hearing the sentencing court accurately outlined the sentence range for the amended Count 1.

---

[3] On appeal, Bear states that there was "repeated use of the [twenty-five]-year time frame" at his sentencing. While it is true that the State recommended a twenty-five-year sentence, the "mandatory minimum" for the pre-amended Count 1 was mentioned only once.

¶12 "Erroneous or inaccurate information used at sentencing may constitute a 'new factor' if it was highly relevant to the imposed sentence and was relied upon by the [sentencing] court." *State v. Norton*, 2001 WI App 245, ¶9, 248 Wis. 2d 162, 635 N.W.2d 656 (citation omitted), *abrogated on other grounds by Harbor*, 333 Wis. 2d 53. "This determination will vary from case to case and may depend upon the degree to which the sentencing court was influenced by the" inaccurate information. *See State v. Smet*, 186 Wis. 2d 24, 34, 519 N.W.2d 697 (Ct. App. 1994).

¶13 We conclude that the State's incorrect statement regarding the twenty-five-year mandatory minimum sentence was not highly relevant to Bear's sentence, nor did the sentencing court rely upon the incorrect statement. Notably, during the plea hearing, the court correctly recognized Count 1 as a Class C felony carrying a confinement range between zero and forty years. During the sentencing hearing, the court never referenced the State's incorrect statement regarding the mandatory minimum when articulating its reasoning for the imposed sentence. Instead, in imposing Bear's sentence, the court cited: the public policy behind preventing child sex offenses even when it is unclear if the sexual conduct was "forced"; the victim's young age; Bear's age; Bear's recent federal conviction for the sale of oxycodone; Bear's result on the Rapid Risk Assessment for Sexual Offense Recidivism showing a low risk of reoffending; and Bear's expressed remorse. The court also noted the "absolutely heinous type of act" committed by Bear "involving a vulnerable teenager." According to the court, it would have imposed "more time" had the State recommended it.

¶14 Bear contends that the incorrect statement regarding the mandatory minimum "gave a false sense of the seriousness of the punishment [he] would have faced under the original charge" and "lent credence to the [S]tate's

6

recommendation" by making that recommendation seem "more lenient and appropriate." We disagree. As articulated above, the question is whether the incorrect information "was highly relevant to the imposed sentence and was relied upon by the [sentencing] court." *See Norton*, 248 Wis. 2d 162, ¶9. Nothing in the record provides a basis for us to conclude by clear and convincing evidence that the sentencing court found the State's incorrect statement to be highly relevant, or that it relied upon that statement. Instead, it is readily apparent that the court placed little weight, if any, upon the statement. *See Smet*, 186 Wis. 2d at 34 (concluding that a scoring error for use of a sentencing guideline was not a new factor because the court "placed little weight" on the guideline).

¶15   Bear cites *State v. Travis*, 2013 WI 38, ¶30, 347 Wis. 2d 142, 832 N.W.2d 491, in which our supreme court stated that: "For a reviewing court to conclude there was actual reliance by [a] circuit court, a circuit court need not have stated, 'Because of the existence of this [inaccurate information], you are sentenced to X years of imprisonment.'" (Second alteration in original.) *Travis*, however, dealt with whether a defendant was sentenced upon inaccurate information, not whether the defendant had shown the existence of a new factor. *See id.*, ¶17. Regardless, the *Travis* court required an examination of whether "the circuit court gave 'explicit attention' or 'specific consideration' to the inaccurate information so that the inaccurate information 'formed part of the basis for the sentence.'" *Id.*, ¶31 (citation omitted). As explained above, there is no support in the record for a conclusion that the inaccurate information regarding the mandatory minimum formed part of the basis for Bear's sentence. We therefore conclude that Bear has failed to demonstrate by clear and convincing evidence that the State's misstatement regarding the mandatory minimum constitutes a new factor.

7

## II. Fifteen-year sex offender registration

¶16    Similarly, Bear contends that the misunderstanding by his trial counsel and the sentencing court that the court could order Bear to register as a sex offender for only fifteen years is a new factor.  At sentencing, Bear's trial counsel argued that the State failed to provide notice that it was seeking "lifetime supervision" under WIS. STAT. § 973.125, and that Bear should be subject to supervision for only fifteen years.  The court ruled that "the [fifteen-]year period applies under these circumstances having reviewed the documents here."  It is undisputed that Bear's trial counsel incorrectly argued that Bear should be required to register as a sex offender for fifteen years, and that the court erred by initially requiring Bear to register as a sex offender for fifteen years, as Bear was statutorily required to register as a sex offender for life.  *See* WIS. STAT. § 301.45(5)(b)1m.

¶17    In support of his position that these misunderstandings constitute a new factor, Bear argues that the sentencing court may have sentenced him to a shorter sentence had it known that it must impose lifetime sex offender registration.  According to Bear, "[h]ad either party correctly informed the [sentencing] court of the mandatory lifetime sex offender registration, it is reasonable to assume the need for supervision in the community would have been reduced and the court would have ordered a shorter sentence."

¶18    The State argues, as it did in the circuit court, that the incorrect information does not constitute a new factor.[4]  The circuit court concluded that the sex offender registration issue did not constitute a new factor because "it was clear to" the circuit court from the plea hearing "that there was an understanding that there was going to be a long-term sex offender registry consequence as a result of [Bear's] plea."[5]

¶19    We conclude that the misunderstanding by Bear's trial counsel and the sentencing court that Bear could be ordered to register as a sex offender for fifteen years is not a new factor.   As with Bear's argument regarding the mandatory minimum sentence, there is no evidence in the record that would allow us to conclude by clear and convincing evidence that the court's misunderstanding

---

[4] At the postconviction hearing, the State commented, "I think there is probably a point there that the judge may have given [Bear] a shorter sentence knowing that [Bear] could be on the sex offender registry for the rest of his life.  However, then we're still back[ in] the realm of speculation at that point.  And again the record shows no reliance on that fact to justify [modifying] the sentence."  Citing the first sentence of the State's comment, Bear argues on appeal that the State "conceded that the sentencing court's decision could have been impacted by this erroneous information."  We disagree.  The State's comment, taken as a whole, evinces a clear argument that the court did not rely on the misunderstanding regarding the length of Bear's sex offender registration in setting Bear's sentence.  Regardless, even if the State did concede this issue, "[w]hether the fact or set of facts put forth by the defendant constitutes a 'new factor' is a question of law" that we independently review.  *See* ***State v. Harbor***, 2011 WI 28, ¶36, 333 Wis. 2d 53, 797 N.W.2d 828 (citation omitted).

[5] The circuit court also determined that the sex offender registration issue was not a new factor because sex offender registration is a "collateral consequence."  The State renews the collateral consequence argument on appeal.   It is well established, however, that while a defendant does not have to be informed of a collateral consequence such as sex offender registration before entering a guilty or no-contest plea, ***State v. Bollig***, 2000 WI 6, ¶¶16, 27, 232 Wis. 2d 561, 605 N.W.2d 199, if a court does inform the defendant of that consequence, it must do so accurately, *see* ***State v. Brown***, 2004 WI App 179, ¶¶8-13, 276 Wis. 2d 559, 687 N.W.2d 543 (stating that a defendant may withdraw his or her plea if he or she had a misunderstanding—that was not the product of his or her own inaccurate interpretation—of a collateral consequence).  Bear does not argue that he misunderstood the sex offender registration consequence, and we will not consider that line of inquiry further.

of the sex offender registration requirement was "highly relevant to the imposed sentence and was relied upon by the [sentencing] court." *See Norton*, 248 Wis. 2d 162, ¶9.

¶20    As described previously, the sentencing court agreed that Bear had a low risk of reoffending and, therefore, the court was not expressly concerned with protecting the public. *See State v. Smith*, 2010 WI 16, ¶26, 323 Wis. 2d 377, 780 N.W.2d 90 (sex offender registration statute "reflect[s] an 'intent to protect the public and assist law enforcement' and [is] 'related to community protection'" (alterations in original; citations omitted)). The court was focused primarily on sentencing factors involving the gravity and nature of the offense, the impact of the crime on the victim, and punishing Bear for his actions.[6] And we note that in doing so, the court stated that it would have imposed a longer sentence had the State requested it. Thus, Bear fails to present clear and convincing evidence that any question regarding the length of Bear's sex offender registry would have impacted the court's sentencing decision.

**III. Outdated studies**

¶21    Lastly, Bear contends that the sentencing court's reliance on inaccurate "factual studies" when imposing Bear's sentence constitutes a new factor. As noted above, the sentencing court stated that it possessed "a factual studies file in [its] office" that stated females "younger than 15 that engage in sex:" (1) "have about triple the suicide and depression rates"; (2) "aren't well

---

[6] Because we affirm the circuit court's ruling on the first part of the new factor analysis (i.e., that there was not a new factor) for the mandatory minimum and sex offender registration issues, we need not consider the second part of the analysis regarding the court's discretionary decision as to whether those factors warranted sentence modification.

built physically for becoming a parent"; (3) "often have drops in school performance"; and (4) have "increased cancer rates."

¶22    Assuming without deciding that that the sentencing court's reliance on the factual studies constitutes a new factor because, as argued by Bear, those studies contained inaccurate information that the court relied upon, we conclude the circuit court did not erroneously exercise its discretion by denying Bear's motion to modify his sentence despite the existence of this new factor.

¶23    According to Bear, the circuit court "provided no 'logical rationale' for rejecting [his] argument that a sentence modification was warranted." *See **McCleary v. State***, 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971) (discretionary "decision making" "contemplates a process of reasoning"). However, once we determine that discretion was indeed exercised, we will reverse that decision only if the circuit court "applied the wrong legal standard or did not ground its decision on a logical interpretation of the facts," and "[w]e look for reasons to sustain a [circuit] court's discretionary decision." *See **State v. Wiskerchen***, 2019 WI 1, ¶18, 385 Wis. 2d 120, 921 N.W.2d 730 (citations omitted).

¶24    Contrary to Bear's assertions, the circuit court "made no error of law, and it explained its reason for concluding that the facts [Bear] presented did not justify modification of [his] sentence." *See **Harbor***, 333 Wis. 2d 53, ¶63. The court properly stated the law when it said: "[I]n order for … the [c]ourt to find a new factor, [it] would have to have clear and convincing evidence of a new factor. *And then if there was one, it would have to be a factor that was justifying the modification of a sentence*." (Emphasis added.)  The court later reasoned that

11

> judges all have different backgrounds …. That doesn't mean that I can't use those things that I have in my brain from my prior background when I'm going through cases.
>
> And I think that [the sentencing court] had a similar situation here. He recited and reiterated things that had happened in prior cases, things that he read that made sense as it applied to his sentencing in this particular case.
>
> He didn't say that these things happened to all victims, but he said, you know, my understanding is that sometimes victims have these problems.
>
> And he talked about, you know, STDs and that sort of thing. Whether that was highly relevant to sentencing, whether it was dicta as the State says, I think is not so unusual, not so relevant to this instance that it would warrant any sort of sentence modification just because he had that information in his office or in his file.
>
> Like I said, it's difficult to ask [a] judge to present everything they have ever read about any sort of criminal background or results of crime on victims, and then to have to justify what they believe to be accurate. So I don't think there's anything new there that would [a]ffect how [the sentencing court] sentenced.

The circuit court's reasoning here was based on a logical interpretation of the facts. In the court's view, the facts did not justify modifying Bear's sentence because the court did not find the sentencing court's reference to the studies to be a significant factor in its decision. The sentencing court was clearly motivated by the "absolutely heinous type of act involving a vulnerable teenager." Put differently, while the sentencing court may have considered the general impact on sexual assault and incest victims, it specifically considered the nature of Bear's actions and the impact upon the victim in this case. As such, the circuit court did not erroneously exercise its discretion by concluding that the sentencing court's reference to the studies did not warrant a modification of Bear's sentence.

¶25 Bear takes issue with this conclusion for two reasons. First, he argues that "it is not clear [from the transcript] that [the circuit court] applied the appropriate standard to this new factor under the second prong of the test." To that end, Bear contends the court never made a discretionary decision. The State appears to agree with Bear that the court conducted only an analysis of whether the factual studies constituted a new factor. We disagree with both Bear and the State that the court never made a discretionary decision on the justifications for or against modifying Bear's sentence. Although the court referenced the relevancy of the factual studies, those comments were made in the context of whether the factual studies "[a]ffect[ed]" Bear's actual sentence to a point that any inaccurate information contained therein would justify a sentence modification.

¶26 Second, Bear takes issue with the circuit court's analysis of the factual studies because, according to Bear, he "did not argue that the sentencing court's possession of a file constituted a new factor. Nor did he challenge everything the sentencing court had ever read, remembered or thought about the effects of crimes. [Bear's] claim was that the information contained in the 'factual studies' file … was incorrect …." Regardless of the merits of Bear's arguments regarding other comments that the circuit court made when ruling on his postconviction motion, the court clearly analyzed Bear's claim that the factual studies were inaccurate. The record supports the circuit court's finding that the any inaccurate information in the factual studies did not provide a basis to modify Bear's sentence.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.